**Alvin H. MAZER, Bankrupt-Appellant,**

v.

**UNITED STATES of America and David Shulman, Appellees.**

No. 13468.

United States Court of Appeals
Seventh Circuit.

Jan. 22, 1962.

---

Anna R. Lavin, H. Burton Schatz, Chicago, Ill., for appellant.

James P. O'Brien, U. S. Atty., Jack Joseph, Alex H. Dolnick, Chicago, Ill., for appellee, Brown, Dashow & Langeluttig, Chicago, Ill., of counsel.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and CASTLE, Circuit Judges.

HASTINGS, Chief Judge.

This is an appeal from an order of the district court affirming an order of the referee in bankruptcy denying a discharge to bankrupt (appellant). The denial of discharge followed objections by a creditor, David Shulman (appellee). The discharge was denied upon grounds that appellant filed false and fraudulent schedules [1] and that he failed to keep or preserve books of account or records from which his financial condition and business transactions might be ascertained.[2]

In his original findings, the referee found that on the date of filing his petition in bankruptcy, appellant had a stock of merchandise which he failed to list in the schedule filed by him. In supplemental findings, following a second reference by the district court, the referee elaborated and summarized the evidence on this point.[3]

1. 11 U.S.C.A. § 32 sub. c(1) provides: "The court shall grant the discharge unless satisfied that the bankrupt has (1) committed an offense punishable by imprisonment as provided under section 152 of Title 18 * * *."

18 U.S.C.A. § 152 provides for criminal punishment of: "Whoever knowingly and fraudulently makes a false oath or account in or in relation to any bankruptcy proceeding * * *."

2. 11 U.S.C.A. § 32 sub. c(2) provides: "The court shall grant the discharge unless satisfied that the bankrupt has * * * (2) destroyed, mutilated, falsified, concealed, or failed to keep or preserve books of account or records, from which his financial condition and business transactions might be ascertained, unless the court deems such acts or failure to have been justified under all the circumstances of the case * * *."

3. "The bankrupt filed his voluntary petition on February 24, 1959. In his original Schedule B-2 he listed:
'C. Stock in trade in business—
NONE'
He was examined at the first meeting of creditors on March 20, 1959 both by the Referee and for 20 minutes by creditors. On May 18, 1959, at an adjourned meeting, the bankrupt was present and examined for one hour. On June 8, 1959 leave was granted bankrupt to file

With reference to the books and records, the referee found that subsequent to January 1, 1958 appellant had in his possession books of account and records pertaining to his business transactions, and that these books and records were not turned over to the receiver or trustee. The referee elaborated upon these findings in his supplemental certificate.[4]

■■ Initially, appellant contends that the evidence does not support the findings of fact. The standard by which the referee's findings of fact are to be judged is whether they are clearly er-

---

Amended Schedules B-2, B-3 and B-4, and an Amended Statement of Affairs, and such amendments were filed. The Amended Schedule B-2 lists under C— 'Stock in trade—25 cases Toffee Corn at $6.00 per case—$150.00.' The bankrupt was engaged in business as a food broker and maintained an office as such. At the hearing on objections to discharge, the bankrupt testified that he had no inventory in his possession on February 24, 1959—that he bought 150 cases of Toffee Corn (a confection) three or four weeks before that date from Corn Treats, Inc. for $750.00 or $800.00; that he sold it as soon as he got it to Ted Kessler (his brother-in-law) who paid for it in cash. The Amended Schedule B-2 lists 25 cases of Toffee Corn. 'I had no inventory but had money coming on the merchandise which I had sold.' 'My Amended Schedule indicates that I had inventory on February 24, 1959. The Amended Schedule is correct—the original schedule is false. The reason I did not list the merchandise in my original schedules was because Kessler had not paid me for the merchandise.' (If this were true then his former statement that Kessler had paid for it in cash is false. [For] he failed to schedule any indebtedness due the bankrupt from Kessler.) 'At the time of bankruptcy, I owed Corn Treats, Inc., approximately $900.00 for 150 cases of toffee corn and they accepted that as payment. This was set off against the money which I had due me from Corn Treats, Inc. for commissions. I did not owe it any money at the time of bankruptcy.' (However, bankrupt listed Corn Treats, Inc. as a creditor for $1800.00 in his original Schedule A-3.)"

4. "In bankrupt's original Statement of Affairs under Question 5 requesting information as to books and records, bankrupt stated he kept such records but that his books were destroyed in fire in 1958. [Subsequent proof showed that the fire in question occurred in 1957]. In his Amended Statement of Affairs, he stated —'All books and records were stored at the office of Irving Manaster & Co., 1112 W. Randolph St.—Have been informed that bookkeeper in that firm threw out all of the records some months ago.' He testified at the hearing upon objections to discharge that he kept record books of his business; that they had been destoyed; that he started storing his books and records at the end of 1956 until 1957; that he last saw the books in 1957—some were in filing cabinets, some in cartons; that he was told someone cleaned out the files and destroyed them. He testified that he had no records of what happened to the money received by him, checks payable to his orders in the amount of $1500.00, $1750.00, and $2500.-00, but that said checks were loans and had been paid. That the money went to Hamilton Foods Company of which he was president and the owner of one-third of its stock. That the records as to these checks were among those stored by him. He produced at the hearing a list of what he called 'List of My Income & Expenses from October 13, 1958 to February 2, 1959, which consisted of six loose accounting sheets which did not show any sales by him or commissions due to him. These sheets were the only records which he has turned over to the Receiver or Trustee. He was shown a copy of his income tax return for 1957 and stated that he got the information for that return from his records. The return was prepared right after the end of 1957—that he had the records when he filed the return and that they were among the records filed with Irving Manaster & Co. * * *

"It seems apparent that the bankrupt did store certain documents in the Manaster Building and that such records as were stored there were damaged by the fire which happened in June 1957 and which were thrown out in the Fall. It is apparent however from the bankrupt's testimony that he prepared his 1957 income tax return right after the first of 1958 from the records stored by him in the Manaster building, which would lead to a strong supposition that the records from which he prepared his income tax return were not among the papers stored by the bankrupt."

roneous. General Orders in Bankruptcy, No. 47, following 11 U.S.C.A. § 53; In re Berberich, 7 Cir., 190 F.2d 53 (1951). The referee has amply and correctly summarized the evidence, and his findings of fact, confirmed by the district court, are not clearly erroneous.

■ Appellant next argues that the burden of proving that he had not knowingly filed fraudulent schedules and that he had not failed to turn over books and records in his possession was erroneously placed on him. The Bankruptcy Act provides that if the objector shows to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed acts which would bar his discharge, the burden of proving that he did not commit such acts is upon the bankrupt. 11 U.S.C.A. § 32, sub. c(7). The burden shifts when the objecting creditor makes out a prima facie case. See Lloyd v. Industrial Bank of Commerce, 2 Cir., 241 F.2d 924 (1957); 1 Collier, Bankruptcy § 14.12 (14th ed. 1956). The record clearly shows that appellee made out a prima facie case whereupon the burden of proof shifted to appellant; hence the referee did not err in so holding.

■ Appellant contends that the amended schedule, listing the toffee corn as an asset, relieved him of having made a false oath. We do not agree. In Kern v. United States, 6 Cir., 169 F. 617 (1909), the same argument was made and rejected. The court said: "The offenses of false swearing and concealment when once committed could not be retrieved by right and lawful conduct and the doing of things 'meet for repentance' * * *." Id. at 620. See also 7 Remington, Bankruptcy § 3095 (6th ed. 1955).

■ Appellant complains that the referee made no fact finding that failure to preserve books and records made it impossible to determine his financial condition. See In re Leichter, 3 Cir., 197 F.2d 955 (1952), cert. denied, 344 U.S. 914, 73 S.Ct. 336, 97 L.Ed. 705 (1953). However, in his supplemental certificate, the referee found that the only records ever produced were six loose accounting sheets which showed neither sales by appellant nor commissions received by him. In view of the fact that appellant was a food broker, this finding is sufficient to show impossibility of ascertaining appellant's financial condition. Furthermore, the inadequacy of the records produced was never disputed. In his original and amended schedules, appellant stated that the records pertaining to his financial affairs were not in existence. Yet, bankrupt testified that in 1958 he prepared his 1957 income tax return from records that were destroyed in 1957. Appellant testified that he had no records which would show what became of certain monies received by him. The referee was justified in not fully crediting bankrupt's testimony relating to the destruction of his records by fire in 1957. The referee's finding and determination on this proposition were not a clear abuse of discretion and were not clearly erroneous. In re Marx, 7 Cir., 125 F.2d 335 (1942). See Morris Plan Industrial Bank v. Henderson, 2 Cir., 131 F.2d 975 (1942).

We have carefully considered appellant's remaining contentions and find them without merit.

Upon our examination of the record in this case, we are convinced that the district court was correct in considering that the referee's order denying a discharge to bankrupt was proper.

The order of the district court is affirmed.

Affirmed.