Mario AVALLONE, Objecting Creditor-Appellant,

v.

Edward G. GROSS, Bankrupt-Appellee.

No. 18, Docket 27471.

United States Court of Appeals Second Circuit.

Argued Oct. 9, 1962.

Decided Oct. 30, 1962.

Alexander H. Rockmore, New York City, for appellant.

Lawrence Lauer, New York City (Edward R. Garber, New York City, on the brief), for appellee.

Before CLARK, MOORE and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

Gross, the bankrupt herein, was half owner of a wholesale automotive parts business incorporated under the name of Coretti-Gross, Incorporated, doing a business of some $1,800,000 yearly. In September 1959 he borrowed substantial sums of money and bought out his co-owner for $100,000, changing the corporate name to Edward G. Gross Corporation, which went into bankruptcy in May 1960, its working capital having apparently been impaired to obtain cash for purchase of part of the co-owner's stock. The objecting creditor, one of Gross'

lawyers in the transaction, advanced Gross $10,000 on a noninterest bearing note to assist him in financing the purchase, as did Kanon, another of his then counsel.

Gross opened a bank account at the Royal State Bank August 28, 1959, and closed it in May 1960, both within two years of the filing of the individual bankruptcy petition herein on September 15, 1960. The account showed total deposits of approximately $15,600, and corresponding withdrawals, principally at or soon after the stock purchase, and stated by Gross to have been used primarily in connection with the purchase. On February 29, 1960 Gross borrowed $1056 from the Manufacturers Trust Company on a personal loan basis. From February 29, 1960 to September 15, 1960 he repaid $528 in six monthly payments of $88 each. In the Statement of Affairs filed by the bankrupt he incorrectly stated that he had no bank account within two years prior to the filing of the bankruptcy petition, and that he had repaid no loans during the year preceding the filing of the petition. In his Schedules in Bankruptcy he stated under oath that the schedules contained a full and true statement of all his debts although the debt to Manufacturers Trust was omitted. His schedules showed total debts of $237,490.-71, assets of $800. At his first meeting October 4, 1960 Gross testified under oath that his Schedules and Statement of Affairs contained a true statement of all his assets and liabilities. On his examination under Section 21a of the Bankruptcy Act on January 25, 1961 Gross again testified under oath that his Schedules and Statement of Affairs contained a true statement of his assets and liabilities.

The referee found the five statements attacked by the objecting creditor to be false, but not made with intent to defraud. The District Court for the Southern District of New York, Irving Ben Cooper, D. J., on petition for review upheld the referee, and the objecting creditor appeals. We affirm.

There is no question but that the omission of the bank account was an omission which would require denial of discharge if knowingly and fraudulently made. "The very purpose of the statement of affairs is to give dependable information without need of going further." In re Tabibian, 289 F.2d 793, 796, 797 (2 Cir. 1961). The other statements, likewise made under oath and concededly incorrect would if made with the requisite knowledge and intent also require denial of discharge.

■■ The crucial question here is whether the requisite knowledge and intent existed. So far as the existence of the Manufacturers Trust personal loan was concerned, the referee credited the bankrupt's testimony that he had forgotten the matter, the payments on which were made by his wife, until reminded of it by his wife some two weeks after the schedules had been filed, that he thereupon disclosed the omission to counsel, who advised that the only effect was not to extinguish the balance of the debt and that amendment was not necessary. This was corroborated by counsel.

The referee credited Gross' testimony that the omission of the Royal State Bank account was inadvertent, that the petition was prepared by counsel while the bankrupt was temporarily on training duty in the Army, while he was harassed by law suits and his wife distressed. He held that the statements that the schedules were true statements were not false because of the attorney's advice. One difficulty with this is that the former existence of the Royal State Bank account had not been revealed by the bankrupt to counsel. The referee did, however, observe the demeanor of the bankrupt on the stand, where he promptly acknowledged discrepancies when called to his attention. Moreover, any fraudulent motive for omission of the relatively small Manufacturers Trust transaction, and the Royal State account is not readily apparent in view of the familiarity of Avallone and Kanon, Gross' creditors and former attorneys with the mechanics of his financing of the stock purchase,

and in Kanon's case of the Manufacturers Trust loan's purpose. Compare Thompson v. Eck, 149 F.2d 631 (2 Cir. 1945).

With due regard for the value of demeanor testimony in weighing good faith, we cannot say that the referee was "clearly erroneous" in finding a lack of intent to defraud in Gross' various omissions and misstatements.

Order affirmed.