**In re James DIODATI, Debtor.**

**GUARDIAN INDUSTRIAL PRODUCTS, INC. OF MASSACHUSETTS, Plaintiff,**

v.

**James DIODATI and Herbert C. Kahn, Trustee, Defendants.**

Bankruptcy No. 80–00809–HL.
Adv. Nos. A80–0567, A80–0529.

United States Bankruptcy Court, D. Massachusetts.

March 16, 1981.

Edmund R. Pitts, Boston, Mass., for plaintiff.

Jordan L. Shapiro, Malden, Mass., for defendants.

## MEMORANDUM ON DISCHARGE

HAROLD LAVIEN, Bankruptcy Judge.

The Plaintiffs in this proceeding, Guardian Industrial Products, Inc. of Massachusetts and Edward Smigielski, seek to bar the discharge of the Debtor, James Diodati, pursuant to Section 727 of the Bankruptcy Code.[1] Although it is not specified in this complaint, the particular subsection relied on by the Plaintiffs is § 727(a)(4)(A), which provides:

(a) The Court shall grant the Debtor a discharge, unless

(4) The Debtor knowingly and fraudulently in or in connection with the case

(A) made a false oath or account.

Specifically, the Plaintiffs allege twelve different transactions to which the Debtors made false oaths on their Petitions, required to be under oath by Bankruptcy Rule 109. At the trial, the Debtor conceded seven inaccuracies in his Schedules and Statement of Affairs but maintained that the inaccuracies were the result of innocent misunderstandings and mistakes and were not the result of any fraudulent intent. From all the evidence, I find that the Debtor's Schedules and Statement of Affairs contained the following false answers:

(1) On Schedule A–2, which requires the Debtor to list secured creditors, the Debtor answered "None". In fact, however, the Malden Trust Company held two outstanding mortgages with substantial balances. One was a mortgage on which the Debtor was jointly liable with his spouse. The other was a mortgage given by Valid Restoration Corp., which the Debtor assumed personally.

(2) The Debtor answered "No" to Question 9 of the Statement of Affairs, which reads:

"Is any person holding anything of value in which you have an interest? (Give name, address, location and description of the property, and circumstances of the holding.)"

In fact, various bank accounts were held by the Debtor's spouse in trust for the Debtor.

(3) In response to Question 8b of the Statement of Affairs, which reads:

"Have you made any assignment of your property for the benefit of your creditors within two years immediately preceding the filing of the original petition herein?)",

the Debtor answered "No". In fact, the Debtor did assign and transfer a $15,000 bank account held in trust for him to the Malden Trust Company, on August 17, 1979, well within the two years prior to the filing of the Petition on May 13, 1980.

(4) In response to Question 14a, which reads:

"Have you suffered any losses from fire, theft, or gambling during the year immediately preceding the filing of the original petition herein? (If so, give particulars, including dates, names, and places, and the amounts of money or value and general description of property lost.)",

the Debtor answered "No". In fact, the Debtor sustained gambling losses of $300.00 in 1979, as is indicated on his tax return for that year.

---

1. The consolidated adversary proceedings also included a complaint by the Plaintiffs alleging a fraudulent conveyance, which was found against them from the bench at the conclusion of the trial, and a complaint for non-dischargeability also brought by the same Plaintiffs. I rule against the Plaintiffs on this cause of action for dischargeability because, as a matter of law, they have failed to sustain any of the required elements of 11 U.S.C. § 523 and, in any event, is rendered moot by the denial of discharge.

(5) The Debtor answered "None" to Question 11, which reads:

"What repayments on loans in whole or in part have you made during the year immediately preceding the filing of the original petition herein? (Give the name and address of the lender, the amount of the loan and when received, the amounts and dates of payments and, if the lender is a relative, the relationship)".

When, in fact, he made payments on two loans in 1979, as indicated on his tax return of that year.

(6) In response to Question 2c, which reads:

"Have you been in a partnership with anyone, or engaged in any business during the 6 years immediately preceding the filing of the original petition herein? (If so, give particulars, including names, dates, and places.)", the Debtor failed to make any mention of Valid Restoration Corp., a building construction corporation of which the Debtor was president, a member of its board of directors, and shareholder, owning all of the outstanding shares. Nor did he include this information in response to Questions 26a, b or c, which require information about any corporate or partnership interests of the Debtor.

(7) The Debtor answered "No" to Question 8a, which asks:

"Was any of your property, at the time of filing of the original petition herein, in the hands of a receiver, trustee, or other liquidating agent? (If so, give a brief description of the property, the name and address of the receiver, trustee, or other agent, and, if the agent was appointed in a court proceeding, the name and location of the court and the nature of the proceeding.)"

In fact, a receiver was appointed to oversee the business of Valid Restoration Corp. on February 16, 1977 by the Middlesex Superior Court. The Debtor was President, Director and owner of all 200 shares of the outstanding stock of the corporation and the Receiver was still in place at the time the Debtor filed his Petition.

The Petition and Schedules were duly sworn to and signed by the Debtor, who did not contest the authenticity of his signature. In attempting to explain his answers to the above questions, both the Debtor, and especially his counsel, made much of the Debtor's lack of education and a general lack of intelligence. The Debtor testified that he did not list the Arlington Savings Bank mortgage because it was his wife who actually borrowed the money but, nonetheless, the Debtor knowingly signed the notes at the bank's request. The reason given for not indicating his involvement with Valid Restoration Corp., was that the corporation was in the hands of a State Court Receiver and, in any event, any shares owned by the Debtor were worthless. In short, the Debtor's defense rests primarily on his claim that any inaccuracies were the result of innocent misunderstandings and mistakes and were not the product of any fraudulent intent.

The primary purpose of § 727(a)(4)(A) of the Code, and its predecessor, § 14(c)(1) of the Bankruptcy Act, is to ensure that dependable information is supplied for those interested in the administration of the bankruptcy estate on which they can rely without the need for the trustee or other interested parties to dig out the true facts in examinations or investigations. *See, e. g., In re Tabibian*, 289 F.2d 793, 797 (2nd Cir. 1961). The trustee and creditors are entitled to honest and accurate signposts on the trail showing what property has passed through the Debtor's hands during the period prior to his bankruptcy. *In re Mascolo*, 505 F.2d 274, 278 (1st Cir. 1974) (quoting *In re Slocum*, 22 F.2d 282, 285 (2nd Cir. 1927). While a false statement in the Schedules or Statement of Affairs due to mere mistake or inadvertence is not sufficient for the denial of a discharge—fraudulent intent is necessary to bar a discharge, *In re Mascolo, supra, Avallone v. Gross*, 309 F.2d 60, 61 (2nd Cir. 1962), the courts have

held that a reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may rise to the level of the fraudulent intent necessary to bar a discharge. *In re Diorio*, 407 F.2d 1330, 1331 (2nd Cir. 1969).

■ In this case, there is no factual issue as to the statements made. They are admittedly false. The sole issue to be determined is whether the false statements were knowingly and fraudulently made, or made with such a reckless disregard for their truth so as to fall within the prohibition of § 727(a)(4)(A).

The Debtor had an excuse as to each falsely answered question; either he didn't understand that the item had to be included since it was primarily the obligation of another or was of no real value to his estate.

Individually, any one answer may have been the result of an innocent mistake. However, the cumulative effect of all the falsehoods together evidences a pattern of reckless and cavalier disregard for the truth serious enough to supply the necessary fraudulent intent required by § 727(a)(4)(A).[2] *LaVangie v. Mazzola*, 4 B.R. 179 (Bkrtcy.D.Mass.1980).

■ The Debtor's general lack of formalized education is not a persuasive mitigating factor for his disregard for the truth. Certainly, education is not a requirement for honesty and even the untutored know if they won or lost at gambling. The Debtor had been the guiding power behind the formation of two closely held construction companies. He had a basic understanding of mortgages and with even the most basic knowledge of construction transactions, the Debtor knew that when he signed a mortgage note with his wife, he became jointly liable on the note, and that when he personally signed a mortgage given by one of his corporations, this made him personally responsible for the underlying debt. This information should have been revealed on his Petition. The Debtor's insistence that he did not think he was responsible for any of these debts and that he did not think the information important is not credible and, in any event, the determination of relevance and importance of the question is not for the Debtor to make. It is the Debtor's role simply to consider the question carefully and answer it completely and accurately. *See, In re Condura*, 5 B.C.D. 578, 579–580 (S.D.N.Y.1979).

■ The fact that the Debtor's stock in Valid Restorations Corp. may have been worthless is no excuse for not listing it. In *In re Mascolo, supra*, the First Circuit Court of Appeals indicated the importance of and relevance of including even closed bank accounts in a debtor's schedules. *Mascolo, supra*. Again, the duty is on the Debtor to answer, and not evaluate. *In re Condura, supra*. "The materiality of the false oath will not depend upon whether in fact the falsehood has been detrimental to the creditors." *In re Slocum*, 22 F.2d 282, 285 (2nd Cir. 1927).

■ The fact that in this case, the Trustee is not a Plaintiff in the action, and has since reported to the Court that he has gained the Debtor's cooperation in fully disclosing his financial background, does not rectify the original wrong. In *In re Tabibian*, 289 F.2d 793, 797, "The referee felt that the false answer was 'cured' by [the Debtor's] subsequent testimony at the first meeting of creditors. As a 'rule of law', stated broadly, the referee was incorrect." *Id.* *See also In re Moynagh*, 560 F.2d 1028 (1st Cir. 1977).

■ Courts have consistently held that a debtor's reckless disregard for the truth in answer to questions propounded during the Debtor's examination or otherwise is the equivalent of fraud. *In re Diorio*, 407 F.2d 1330 (2nd Cir. 1969), *LaVangie v. Mazzola, supra*. This basic notion in American jurisprudence can be traced back to the English case of *Lieure v. Gould*, 1 Q.B. 491 (1893), wherein the court stated:

---

2. The Debtor exhibited something less than a serious concern by his failure to even appear at the first trial date. The default was removed more because of counsel's impassioned representation of a valid defense than an excusable absence.

Again, a man must be said to have fraudulent mind if he recklessly makes a statement intending it to be acted upon, and not caring whether it be true or false. I do not hesitate to say that a man who thus acts must have a wicked mind. *Id.* at 498.

But his mind is wicked, not because he is negligent, but because he is dishonest in not caring about the truth of his statement ... it is the wicked indifference, which constitutes fraud. *Id.* at 500.

*See also, In re Herriot,* 1 B.C.D. 793, 796 (D.Mass.1975).

Any one of the falsely answered questions by itself could be explained away by carelessness, mistake, or any other of a variety of non-fraudulent excuses. However, the sheer number of falsely answered questions with similar excuses, are links in a chain of "wicked indifference" constituting a fraud designed to obscure the trail of the Debtor's recent financial past.

This requirement of an honest, conscious effort to prepare accurate, detailed and complete Schedules and Statements of Affairs is not intended as a trap for the unwary or an undue emphasis on technical compliance but, rather, as a reasonable quid pro quo. If the Debtor is to be relieved of substantially all his obligations (under Chapters 11 and 13 they may not even have to be honestly acquired), the creditors are at least entitled to rely on the Schedules and Statement of Affairs furnishing the true facts on which to make an evaluation of the Debtor's financial condition and for the Trustee to make and the creditors to be satisfied that they are receiving the fullest pro rata distribution. The $20.00 paid the Trustee is hardly enough to expect him or her to have to verify a no asset filing.

The fresh start offered by the 1978 Act may well be the most extensive since the seven year release described in the Old Testament [3] and what is required of the Debtor is that in asking for this relief he not be deliberately dishonest. Here, seven significant and relevant financial facts known to the Debtor to exist were represented un-

equivocally as not existing in answer to simple and direct questions. While scrupulous accuracy would be ideal, in the practical affairs of men it is not required; however, a serious effort at providing honest answers is required. A cavalier casual attitude toward the importance of accurate, complete and honest answers in this context equates to knowingly and fraudulently making a false oath.

An order should issue denying the Debtor, James Diodati, a discharge in bankruptcy due to his false oaths in violation of 11 U.S.C. § 727(a)(4)(A).