In re Roger GONDAY & Marie B. Gonday, Debtors.

ECONOMY BRICK SALES, INC., Plaintiff,

v.

Roger GONDAY & Marie B. Gonday, Defendants.

Bankruptcy No. 82–00274.
Adv. No. 82–0162.

United States Bankruptcy Court, M.D. Louisiana.

Feb. 7, 1983.

Michael J. Matthews, Baton Rouge, La., for plaintiff.

John A. Gutierrez, Gonzales, La., for defendants/debtors.

A. LEON HEBERT, Bankruptcy Judge.

## REASONS FOR JUDGMENT

This matter comes before the Court on a complaint filed by Economy Brick Sales, Inc., a creditor herein, on August 10, 1982, seeking to bar the discharge of the above-named debtors, Roger Gonday and Marie B. Gonday. A hearing on the complaint was held on October 28, 1982, and the matter was taken under advisement. The disposition of the issues presented in said complaint is now addressed herein.

## FINDINGS OF FACT

Roger Gonday and Marie Baker Gonday filed a voluntary joint petition on May 17, 1982, seeking relief under the provisions of Chapter 7 of Title 11 of the United States Code. Annexed to their petition, pursuant to Rule 108 of the Rules of Bankruptcy Procedure, were a "Statement of Financial Affairs For Debtor Not Engaged in Business" ("Statement of Affairs") and schedules of assets and liabilities of said debtors ("Schedules").

The debtors affirmed under oath dated March 30, 1982, by affixing their respective signatures on the appropriate lines pursuant to Rule 109 of the Rules of Bankruptcy Procedure, that they had read the Statement of Affairs and Schedules before signing, and that the information contained therein was true and correct to the best of their knowledge, information and belief.

A meeting of creditors of said debtors was held on June 15, 1982, pursuant to Section 341(a) of said Title 11 ("Meeting of Creditors"). Both Mr. and Mrs. Gonday appeared at the Meeting of Creditors and testified, under oath, as to their financial affairs, assets and liabilities of the estate. Because of apparent inconsistencies between the information contained in the Statement of Affairs and Schedules filed May 17, 1982, and the testimony adduced on June 15, 1982, the debtors were asked by both the Trustee and the Deputy Clerk presiding over the meeting to amend their papers to make whatever corrections were necessary in order for the papers to reflect accurate information.

On August 10, 1982, as no attempt to make amendments was made, Economy Brick Sales, Inc., a creditor herein ("Economy"), filed a complaint to bar the discharge of the debtors. The particular reasons upon which Economy seeks relief are not itemized in the complaint, but no answer was ever filed by the debtors. In a memorandum supporting the denial of the discharge and throughout the hearing on the complaint, counsel for Economy made clear to the Court that Economy relied upon Sections 727(a)(2)(A) and 727(a)(4)(A) of said Title 11.

Section 727(a)(4)(A) provides, *inter alia,* that

(a) the Court shall grant the debtor a discharge, unless

(4) the Debtor knowingly and fraudulently in or in connection with the case

(A) made a false oath or account.

11 U.S.C. § 727(a)(4)(A).

From an examination of all the evidence, including the Statement of Affairs and Schedules in the record, the transcript of the Meeting of Creditors on June 15, 1982, the testimony of both Mr. and Mrs. Gonday on October 28, 1982, and the exhibits introduced into the record, this Court finds as a matter of fact that the debtors' Statement of Affairs and Schedules intentionally contained the following omissions and misrepresentations:

(1) In Question 1(d) of the Statement of Affairs debtors intentionally omitted the existence of a prior residency in which they resided within six years preceding the filing of the petition. The debtors lived as late as December, 1981, in a house titled in their names located on Florida Boulevard, Denham Springs, Louisiana. During the meeting of creditors, the debtors acknowledged the existence of the residency relative to questions about the house, but never explained why the omission in 1(d) was made.

(2) The debtors answered "None" in response to Question 2(c) of the Statement of Affairs, which requires a debtor to detail prior business conduct during the six years preceding the filing of the petition. Mr. Gonday, however, testified that he had started a business in April or May, 1981, and sustained operation of that business for "a couple of months" thereafter. There is nothing in the Statement of Affairs which would indicate that Mr. Gonday had started a business. Without the trustee asking about business enterprises, the Court would not have known about them. The omission was never corrected.

(3) The debtors answered "None" to Question 7 of the Statement of Affairs, which reads:

"What cases under the Bankruptcy Act or Title 11, United States Code have previously been brought by or against you?"

In fact, at the Meeting of Creditors the debtors testified under oath to the trustee that they had been granted a discharge in a personal bankruptcy case filed by them in California about twenty years ago. This testimony, if true, would indicate that the debtors are "bankruptcy wise," and should therefore have a full appreciation of the import of their disclosures and omissions.

(4) The debtors answered "None" in response to Question 11 of the Statement of Affairs, which inquired

"(w)hat repayments on loans in whole or in part have you made during the year immediately preceding the filing of the original petition herein?"

The repayments could constitute fraudulent conveyances which might be avoided by a trustee under Section 548 of Title 11 of the United States Code. When asked by the trustee herein, the debtors confirmed their written answer during the Meeting of Creditors. However, under cross-examination by Economy during the same Meeting of Creditors, the debtors conceded that proceeds of a sale confected May 27, 1981, in the amount of $75,000.00 were transferred to Livingston State Bank in order to reduce a $100,000.00 indebtedness. No explanation was given why the omission was originally made.

Mr. Gonday varied the testimony slightly during the hearing on the complaint on October 28, 1982. He then represented that only $70,000.00 or so went to Livingston State Bank while the balance was received for "labor." Mr. Gonday also testified that everything received was spent, but there was no effort to explain any further details of the alleged expenditures.

(5) Question 12(b) of the Statement of Affairs inquired:

"(h)ave you made any other transfer, absolute or for the purpose of security, or any other disposition of real or tangible personal property during the year immediately preceding the filing of the original petition herein?"

In response to this question, the debtors answered "None." During the Meeting of Creditors, however, Mr. Gonday admitted under oath that he did transfer tools he had valued at about $2,000.00 to his brother, Charles Gonday, for and in consideration of about $300.00 sometime around February, 1982 (three months prior to filing a bankruptcy petition). Mr. Gonday also conceded the sale of furniture which may not have been his to sell. When asked by the trustee whether those were the only omissions, Mr.

Gonday replied "that is it as far as I know." The omission of the sale was not explained.

The debtors did not concede the sale by them of immovable property until after being specifically examined about the transaction by the attorney for Economy, after the trustee had completed his examination. The debtors then admitted that they had sold about nine-tenths of an acre of immovable property on May 27, 1981, to Mr. Rubin Spillman for $75,000.00 by cash sale.

The Court notes that the debtors still list ownership interest in 1.89 acres of immovable property (thereby including the .85 acres sold a year earlier to Mr. Spillman) in their Schedule B-1—Real Property. Also, during examination by the attorney for Economy, Mr. Gonday suggested that there was a two-story apartment house on the .85 acres. If there was equity in the property, the trustee could perhaps avoid the transfer of that property to Mr. Spillman for the benefit of other creditors. However, the failure to identify the transactions in toto prejudices the trustee's options.

(6) The debtors responded "None" to Question 13 of the Statement of Affairs which inquired

"(h)as any property been returned to or repossessed by, the seller or by a secured party during the year immediately preceding the filing of the original petition herein."

The debtors testified during the Meeting of Creditors that, in fact "(they) have returned quite a number of things to different people."

(7) Question 15 of the Statement of Affairs inquired into whether the debtor had retained attorneys during the year preceding the filing of the petition herein. In response to this inquiry, the name of John A. Gutierrez, attorney for the debtors herein, appears with a fee of $450.00 being promised or paid. Although the reason for the employment was not detailed, the Court presumes that the services rendered were all relative to the bankruptcy.

The employment of Mr. Louis Unglesby is a matter totally omitted from the State-

ment of Affairs. From the evidence adduced, the Court finds that Mr. Unglesby was retained by the debtors in November, 1981, to represent one of the debtors in a criminal proceeding. During the Meeting of Creditors, Mr. Gonday testified as follows:

By Mr. Matthews:

Q: And you paid for fees for him in connection with that matter?

A: Yes Sir.

Q: How much did you pay to him?

A: Ten Thousand Dollars.

Q: And in what form was that paid?

A: Cash.

However, during the hearing on the complaint, Mr. Gonday represented to the Court that it was his brother, and not he, who paid for the lawyer to defend the debtor in the criminal proceeding. Additionally, at both hearings, Mr. Gonday conceded that the debtors have employed Mr. Unglesby to represent them in civil litigation pending as a result of the failure of an insurance company to cover fire loss sustained by the debtors around January of 1982. None of the particulars surrounding any representation by Mr. Unglesby, whether in a civil or criminal proceeding, can be gleaned from the debtors Statement of Affairs. These omissions remain unexplained.

(8) The debtors failed to list as an asset of the estate in Schedule B–2—Personal Property any contingent or unliquidated claims the debtors allegedly had at the time of filing bankruptcy against any insurance company for breach of contract. The Denham Springs residence was partially destroyed by fire and vandalism and the loss was insured against. The allegedly wrongful failure of an insurance company to honor an insurance contract wherein the debtors were loss payees would create a contract action in favor of the debtors which would enure to the benefit of the estate. No such claim was listed in the Schedules, but the evidence suggest that a claim, in fact, exists. Mr. Unglesby apparently was hired to pursue that claim.

The omissions and misrepresentations found by the Court to exist may not be exhaustive. Each omission by itself could be material, but proper disclosure would diminish the materiality such that the effect on the administration of the estate of any omission previously made would be negligible. Without amendment to the Statement of Affairs and Schedules however, each omission remains material and the lack of accurate information has an adverse effect on the administration of the debtors' estate.

It is clear to the Court that each debtor certainly knew of the various omissions and misrepresentations after the Meeting of Creditors. The debtors, through the testimony of Mr. Gonday, represent that they did not fully read what they affirmed under oath, and therefore were only "familiar" with the allegations made therein. They were more than just "familiar" with the allegations made in the Statement of Affairs and Schedules after the Meeting of Creditors, however, as evidenced by the transcript of that hearing.

The request by the trustee for the debtors to meet with their attorney and amend their papers to correct inconsistencies was reasonable—the subsequent failure to file any amendments was reprehensible. In effect, the debtors were given the opportunity to recant their prior written testimony, made under oath. By knowingly failing to amend their papers, they reaffirmed the veracity of their representations made under oath in the Statement of Affairs and Schedules, despite having been extensively examined and enlightened on the existence of the misrepresentations.

Before they originally affixed their signatures to the oath, they should have been advised by their attorney that the oath includes an affirmation that the declarant had read the documents. This information is in the oath itself. For the debtors to now represent that they, in fact, did not read the documents is simply unbelieveable. However, even giving the debtors the benefit of the doubt, the extensive Meeting of Creditors on June 15, 1982, gave notice to the

debtors of the various omissions and mis-representations and it was then their duty to make the necessary amendments—their intentional failure to do so supports the conclusion that the debtors have knowingly and intentionally given a false oath in connection with this case.

It is clear from the record that Mr. Gonday was neither cooperative nor honest with the trustee or counsel for Economy. His apparent apathy was evident throughout the hearing on the complaint, and his references to his attorney, for assistance, were only attempts to avoid examination by the parties in interest as to the financial affairs of the debtors. His recalcitrance in answering simple and straight-forward questions of counsel for Economy was abhorrent to the Court and the parties in interest and very indicative of his lack of concern throughout this case for the rights of those parties in interest. The various omissions and the blatant evasiveness by Mr. Gonday support the finding of fact that Mr. Gonday possessed the requisite intent to defraud creditors.

It is, however, too big of a pill to swallow for this Court to find that Mrs. Gonday manifested the same intent. She testified that she relied entirely on her husband and her lawyer to do whatever was necessary to process the bankruptcy. She deferred almost entirely during the Meeting of Creditors to her husband. Her answers were to the point, without recalcitrance nor evasion. The whole affair, for Mrs. Gonday, was simply a backseat trip, without control of either pilot or navigator.

It is true that Mrs. Gonday also knew of the misrepresentations existing in her Statement of Affairs and Schedules and failed to amend accordingly. Her acquiescence, however, in the debtors' decision not to amend the papers can easily be related to the apparent dominant role her husband manifested throughout this case. Mrs. Gonday, through her courtroom demeanor and testimony, has sufficiently demonstrated to this Court that she did not possess the requisite intent to commit fraud required by Section 727 of Title 11 of the United States Code.

## CONCLUSIONS OF LAW

Germane to the plaintiff's case is Section 727(a)(4)(A) of Title 11 of the United States Code, which provides, *inter alia,* that

(a) the Court shall grant the debtor a discharge, unless

(4) the Debtor knowingly and fraudulently in or. in connection with the case

(A) made a false oath or account.

11 U.S.C. § 727(a)(4)(A) (1982). In order for this Court to grant Economy the relief it seeks, the plaintiff must establish each element of common law perjury by a fair preponderance of the evidence. *In re Mascolo,* 505 F.2d 274, 276 (1st Cir., 1974); Rule 407 of the Rules of Bankruptcy Procedure. The burden would then shift to the defendants to come forward with evidence that they have not committed the acts alleged. *Id.* Unless the plaintiff sustains its burden of proof, this Court must grant to the debtor the discharge that was designed to give to the honest debtor the opportunity to reinstate himself in the business world. 11 U.S.C. § 727(a)(1982); *In re May,* 12 B.R. 618, 621 (D.C., N.D.Fla., 1980).

The primary purpose of Section 727(a)(4)(A) of the Bankruptcy Code, and its predecessor, Section 14(c)(1) of the Bankruptcy Act, is to ensure that dependable information is supplied for those interested in the administration of the bankruptcy estate on which they can rely, without the need for the trustee or other interested party to dig out the true facts in exhaustive examinations or investigations. *In re Diodati,* 9 B.R. 804, 807 (Bkrtcy., D.Mass., 1981); *In re Tabibian,* 289 F.2d 793, 797 (2nd Cir., 1961). The trustee and creditors are entitled to honest and accurate signpost on the trail showing what property has passed through the debtors' hands during the period prior to their bankruptcy. *In re Mascolo, supra* at 278 (quoting *In re Slocum,* 22 F.2d 282, 285 (2nd Cir., 1927)). There is no inherent right to a discharge (*United States v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973)) and both Section 727(a)(4)(A) and Section 14(c)(1)

were designed to deny the discharge to the debtor who was either not honest or not cooperative in producing those signpost. *In re Klapp,* 24 B.R. 598, 599 (Bkrtcy.App. 9th Cir., 1982).

■ The plaintiff must demonstrate that the defendants possessed fraudulent intent at the time the false statement was made (*Dilworth v. Boothe,* 69 F.2d 621 (5th Cir., 1934)) since the discharge cannot be denied where only a simple mistake or inadvertance created the existence of a false statement. *Avallone v. Gross,* 309 F.2d 60, 61 (2nd Cir., 1962). Simply put, this Court must find that the debtors made a statement containing matter which they knew to be false, and that it was made willfully with the intent to defraud creditors. *Humphries v. Nalley,* 269 F. 607 (5th Cir., 1921); 4 *Collier on Bankruptcy* (15th Ed., 1983) ¶ 727.04 at p. 727–49. The Court believes Economy has sustained its burden.

■ There is clear and sufficient evidence to support the conclusion that the debtors have made "intentional untruth(s) in a matter material to an issue which itself is material." *Troeder v. Lorsch,* 150 F. 710, 713 (1st Cir., 1906). The fact that Mr. Gonday made several misrepresentations in his Statement of Affairs with the knowledge that they were not correct and in reckless disregard or indifference to the actual facts, and with no reasonable ground to believe those statements to be true, makes those misrepresentations "false" as contemplated by Section 727(a)(4)(A). *Shelby v. Texas Improvement Loan Co.,* 280 F.2d 349, 355 (5th Cir., 1960). The denial of a prior bankruptcy is one such intentional untruth in the debtors' Statement of Affairs that is very material to the issue of a discharge, and that taken alone can justify the denial of the discharge. *See Aronofsky v. Bostian,* 133 F.2d 290 (8th Cir., 1943).

The phrase "knowingly and fraudulently" simply means "an intentional untruth in a matter material to the issue which itself is material." *In re Melnick,* 360 F.2d 918, 920 (2nd Cir., 1966). Individually, any one answer may have been the result of an innocent mistake. However, the cumulative effect of all the falsehoods together evidences a pattern of reckless and cavalier disregard for the truth serious enough to supply the necessary fraudulent intent required by Section 727(a)(4)(A). *In re Diodati, supra* at 808; *LaVangie v. Mazzola,* 4 B.R. 179 (Bkrtcy., D.Mass., 1980). Even if haste with which the Statement of Affairs and Schedules were prepared could excuse the numerous inaccuracies discovered to exist, no carelessness could excuse the debtors' failure to *amend* his papers promptly when he had the leisure to do so. The conduct in this case goes beyond carelessness; it constitutes the "reckless indifference to the truth" that is the equivalent of fraud. *In re Nazarian,* 18 B.R. 143 (Bkrtcy., D.Md., 1982).

Mr. Gonday claimed that his reading perception was less than adequate, but the Court believes that a general lack of formalized education is not persuasive as a mitigating factor for his callous disregard for the truth. *In re Diodati, supra;* his only role was simply to consider the questions carefully and answer then completely and accurately. *In re Condura,* 5 B.C.D. 578, 579–580 (S.D.N.Y., 1979). Given the opportunity to amend his Statement of Affairs and Schedules after the Meeting of Creditors, something encouraged by Rule 110 of the Rules of Bankruptcy Procedure, and his failure to take the opportunity, Mr. Gonday negated any validity to his argument that he just did not read too well. Major improprieties cannot, and will not, be permitted or condoned in schedules by a debtor who signs and acknowledges under penalty of perjury that the same are true and correct. *In re Collins,* 19 B.R. 874, 878 (Bkrtcy., M.D.Fla., 1982).

Mr. Gonday attempted to blame his attorney for the numerous inaccuracies found throughout the Statement of Affairs and Schedules. The competence of the attorney for the debtors is a matter not before the Court. However, a false oath cannot be justified on the ground that the person to whom it is made knows or should have known the truth despite the falsehood. *Keeble v. Sulmeyer,* 290 F.2d 127, 131 (9th

Cir., 1961). Additionally, both the debtors and their counsel were asked by the trustee to amend the Statement of Affairs and Schedules to correct the inaccuracies during the Meeting of Creditors, and at that time the debtor was made aware of the existence of most of the misrepresentations and the legal ramifications of those misrepresentations, should they be allowed to remain. Mr. Gonday's allegations of surprise of the omissions is now just incredible.

Finally, the attorney for the debtors had not expressed a position as to whether he had anything to do with the existence of the inaccuracies. Despite the fact that no answer had been filed in this proceeding, the Court afforded the debtors every opportunity to establish whatever defense the debtors have to the allegations in the plaintiff's complaint. The lack of proof necessary to support the debtor's allegations that his attorney was in any way responsible for the numerous inaccuracies prevents this Court from giving any credence to those allegations in light of the facts surrounding the Meeting of Creditors and subsequent events.

Considering the relative values germane to the misrepresentations, the Court concludes that the omissions were material. The debtors omitted from the Statement of Affairs a sale of $2,000.00 worth of tools for $300.00, the sale of immovable property and the subsequent transfer of $75,000.00, the payment of $10,000.00 as a retainer to an undisclosed attorney, and the disbursement of over $5,700.00 received from an insurance company. Omission of assets from the schedules, if the assets are of some substantial value, may warrant the conclusion that they were omitted purposefully with the fraudulent intent to secrete and conceal the assets in question. *Matter of Galbraith,* 17 B.R. 302 (Bkrtcy., M.D.Fla., 1982); *In re Fischer,* 4 B.R. 517 (Bkrtcy., M.D.Fla., 1980). In this case, that conclusion is mandated by the facts.

As to Mrs. Gonday, there is a different conclusion. Mrs. Gonday did not possess the demeanor and did not give the testimony of one who is indifferent to the truth. The Court is convinced that Mrs. Gonday might very well have amended the Statement of Affairs and Schedules but for the dominance her husband manifested throughout this case. Mrs. Gonday stood by and acquiesced in the decisions of her husband because of the coercive influence that dominance had over her. In conscience and in equity, she should not have to be condemned by denial of her discharge.

Accordingly, for the reasons given herein, an order will be entered granting the relief sought by Economy as to Roger Gonday, thus denying his discharge pursuant to Section 727(a)(4)(A) of said Title 11, and dismissing the complaint as to Marie B. Gonday on the grounds that the plaintiff was unable to sustain its burden of proof as to her.