**In re Thomas Howard COOK, Mary Diane Cook, fdba Co-Ne Dev., Inc., Debtors.**

**The FIRST NATIONAL BANK OF MASON CITY, IOWA, Plaintiff,**

v.

**Thomas Howard COOK, Defendant.**

**Bankruptcy No. 81–03352.**
**Adv. No. 82–0120.**

United States Bankruptcy Court, N.D. Iowa.

July 18, 1984.

John L. Duffy, Mason City, Iowa, for plaintiff.

David M. Nelsen, Mason City, Iowa, for defendant/debtor.

Findings of Fact, Conclusions of Law, and ORDER Sustaining Complaint Objecting to Discharge Pursuant to § 727

WILLIAM W. THINNES, Bankruptcy Judge.

The matter before the Court is the Complaint filed by The First National Bank of Mason City (Bank) objecting to the discharge of Thomas Howard Cook (Debtor). Attorney John L. Duffy represented the Bank and Attorney David M. Nelsen represented the Debtor. The Court, being fully advised and pursuant to F.R.B.P. 7052, now makes the following Findings of Fact, Conclusions of Law, and Orders.

## I. *11 U.S.C. § 727(a)(4)*

The Bank's basis for objecting to the discharge of the Debtor is 11 U.S.C. 727(a)(4)(A):

(a) The Court shall grant the debtor a discharge, unless—

\* \* \* \* \* \*

(4) the debtor knowingly and fraudulently, in connection with the case

\* \* \* \* \* \*

(A) made a false oath or account....

To support its contention, the Bank points to the Statement of Financial Affairs submitted by the Debtor at the time of the filing of the Petition. Specifically, the Bank points to Question 12, which inquired of the Debtor:

a. Have you made any gifts, *other than ordinary and usual presents to family members* ..., during the year immediately preceding the filing of the original petition herein? ...

(b) Have you made any other transfer, absolute or for the purpose of security, or any other disposition, of real or tangible personal property during the year immediately preceding the filing of the original petition herein?

The Debtor responded with an unqualified "No" to Question 12. Also germane to the case at bar is that the Debtor at the end of the Statement of Financial Affairs "certif[ied] under penalty of perjury that [he has] read the answers contained in the foregoing statement of financial affairs and that they are true and correct to the best of [his] knowledge, information and belief." *See generally*, 28 U.S.C. § 1746 (1976).

At trial it was revealed that during the year prior to the filing of his Petition, the Debtor transferred two lots, a boat, a trailer, and various sums of cash to his children. In addition, a third lot was transferred to an unrelated third party. As noted earlier, these transfers were not revealed in his response to Question 12.

1. *False Oath*

a. *Transfers to Children*

One element necessary to support a § 727(a)(4)(A) contention is a false oath. With respect to the cash, the boat, trailer, and two lots transferred to his children, the Debtor asserts that no falsity was perpetrated. Specifically, the Debtor contends that the transfers were "ordinary and usual presents to family members" and therefore not within the purview of Question 12(a). The debtor's contention has merit.

The inquiry sought by Question 12(a) is necessitated by 11 U.S.C. § 521(1):

The debtor shall—

(1) file ... unless the court orders otherwise ... a statement of the debtor's financial affairs....

Because the statute does not enumerate explicit requirements, the "contents of the statement is [sic] left entirely to the Rules of Bankruptcy Procedure." 3 *Collier on Bankruptcy*, ¶ 521.09, at 521–36 (15th ed. 1983). At the time of the filing of the Debtor's Petition, Local Rule 1007(c) required the filing of a statement of financial affairs "in the manner prescribed by [official] form ... No. 7." [1] However, neither the rule, nor the form defined "ordinary and usual presents to family members." In order to gauge whether the Debtor perpetrated a false oath, this Court must determine the meaning of the term "ordinary and usual presents to family members" in Question 12(a).

In *Glidden Rural Electric Co-op v. Iowa Employment Security Commission*, 236 Iowa 910, 20 N.W.2d 435, 438 (1945), the court defined the term "usual" as "such as occurs in ... the ordinary course of events; customary; ... habitual." Similarly, in *Chicago & A.R.R. v. House*, 172 Ill. 601, 50 N.E. 151, 153 (1893), the court defined the term "ordinary" as "common ... [and] often recurring." Applying these definitions to the case at bar, this court

---

**1.** On August 1, 1983, a new set of bankruptcy rules of procedure and forms became effective. These new rules and forms do not, within the context of the issues at bar, mandate a different result. *See*, F.R.B.P. 1007(a); Official Form No. 7. Thus, discussion herein will be confined to the rules and forms in effect before August 1, 1983.

finds that the transfers between the Debtor and his children were indeed "ordinary and usual presents to family members."

First, there is no dispute that the Debtor's children are "family members." Second, there is little dispute that the transfers were in the nature of "presents." Third, the presents were indeed "ordinary" in that they have been "often recurring." Indeed, exhibits admitted at the trial revealed a steady pattern of gifts (in the form of checks to the children) since 1978. Fourth, the presents were "usual" in that they were in "the ordinary course of events, customary, ... [and] habitual." Certainly wedding gifts (boat and trailer) to one's daughter are "customary." Similarly, the Debtor's wife testified that she and her husband had a "habit and custom of giving gifts to children."

In sum, this Court finds that the transfers between the Debtor and his children were "ordinary and usual presents to family members." Because Question 12(a) sought the listing of only those gifts that are "other than ordinary and usual presents to family members," no falsity was perpetrated when the Debtor responded with a "No" to Question 12(a). Discharge therefore will not be denied the Debtor under § 727(a)(4)(A) on the basis of these transfers to his children. *See, e.g.,* *In re Golowaty,* 13 B.R. 781, 784, (Bankr. D.Vt.1981) (no false oath; discharge not denied).

### b. *Transfer to Third Party*

The record also reveals that about one month before the filing of the Bankruptcy Petition, the Debtor, via Warranty Deed, transferred a piece of real estate to one Delbert Hammond. On the "Declaration of Value" form submitted to the County Assessor, a value of $5,000 was disclosed as the amount paid by the buyer. Noting that the Debtor answered "No" to Question 12(b), the Bank contends that § 727(a)(4)(A) has been violated.

Question 12(b) inquires of the Debtor "any ... transfer, absolute or for the purpose of security, ... of real ... property during the year immediately preceding the filing of the original petition." Unlike his response to Question 12(a), Debtor's answer to Question 12(b) was false. Real estate was undoubtedly transferred to Delbert Hammond during the year before the filing. Further, because the Debtor certified to the truthfulness of his answer, an oath was effected. *See,* Note, Local Official Form No. 1; Advisory Committee Note, F.R.B.P. Official Form No. 1. *See generally,* 28 U.S.C. § 1746 (1976). In sum, this Court holds that the Debtor has perpetrated a false oath within the meaning of § 727(a)(4)(A). *See, e.g., In re Irving,* 27 B.R. 943, 945, (Bankr.E.D.N. Y.1983).

### 2. *"Knowingly and Fraudulently"*

Having determined that a false oath was perpetrated, the next issue is whether such false oath was made "knowingly and fraudulently" within the meaning of § 727(a)(4)(A). The purpose and applicable standards of inquiry in a § 727(a)(4)(A) case is perhaps best summarized as follows:

> The primary purpose of § 727(a)(4)(A) of the Code, and its predecessor, § 14c(1) of the Bankruptcy Act, is to insure that dependable information is supplied for those interested in administration of the bankruptcy estate from which they can rely without a need for the trustee or other interested parties to dig out the true facts in examinations or investigations. The trustee and creditors are entitled to honest and accurate signposts on the trail showing what property has passed through the debtor's hands during the period prior to his bankruptcy. While a false statement in the schedules or statement of affairs due to mere mistake or inadvertence is not sufficient for a denial of discharge—fraudulent intent is necessary to bar a discharge, the courts have held that a reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may rise to the level of fraudulent intent necessary to bar a discharge.

*In re Diodati,* 9 B.R. 804, 807–08 (Bankr.D. Mass.1981) (citations omitted); *accord, In re Mazzola,* 4 B.R. 179, 181–82 (Bankr.D. Mass.1980); *see, Irving,* 27 B.R. at 945; *see also, In re Gonday,* 27 B.R. 428, 433 (Bankr.M.D.La.1983) (simple mistake or inadvertence not equivalent of fraud); *In re Gugliada,* 20 B.R. 524, 528 (Bankr.S.D.N.Y.1982).

▆ Applying the above purpose and standards to the case at bar, this Court finds and concludes that the Debtor knowingly ·and fraudulently omitted from his Statement of Financial Affairs the real estate transfer to Delbert Hammond. At the hearing, the Debtor offered no adequate explanation of his failure to list the Hammond transfer. The only justification was that the transfer would have occurred earlier had there been no "abstract problems." While this timing inconvenience may explain why the transfer occurred one month before filing, it does not excuse failure to list the transfer on the statement. Similarly, while one may attribute the Debtor's response to Question 12(b) as mere inadvertence or inattention to detail, the record is devoid of any mitigating facts to support a finding of inadvertence or inattention. In sum, this Court has little choice but to find that the Debtor has fraudulently and knowingly made a false oath.

### 3. *Materiality.*

Having found that the Debtor has fraudulently and knowingly made a false oath the Court must determine if it relates to a material fact. *In re Braidis,* 27 B.R. 470, 472 (Bankr.E.D.Penn.1983). The Court observes that the debtor received the not insubstantial sum of $5,000 from the transaction. Numerous other courts have been faced with questions regarding the discharge of debtors who made false oaths and have denied the debtor a discharge based upon false oaths involving much

smaller sums than the $5,000 involved herein.[2]

▆ The purpose of the question to which the debtor gave his ʹfalse oath is to allow the trustee and the creditors of the debtor to determine if there should be other assets in the bankruptcy estate. "The materiality of a false oath by the debtor will not depend upon whether in fact the falsehood has been detrimental to the creditors." *In re Diodati,* 9 B.R. 804, 808 (Bankr.D.Mass.1981) quoting *In re Slocum,* 22 F.2d 282, 285 (2d Cir.1927). The debtor's role in answering the questions on the Statement of Affairs is to consider the questions carefully and answer them completely and accurately. *In re Diodati,* 9 B.R. 804, 808 (Bankr.D.Mass.1981).

A pre-petition transfer could be a preference, or a transfer for less than full value. In each instance the possibility of harm to the creditors exists. In each instance the trustee could take appropriate actions to recover property for the estate.

▆ This Court observes that the 1978 Act offers to debtors what may well be the most extensive fresh start since the seven year release described in the Old Testament.[3] What is required of the Debtor is that in asking for this relief he not be deliberately dishonest. *In re Diodati,* 9 B.R. 804, 809 (Bankr.D.Mass.1981).

▆ The fact that a pre-petition transfer was made would not preclude a discharge. An honest answer to the question would have allowed the Trustee and Debtor's creditors to fully and fairly evaluate the financial status of the Debtor. An honest answer to the question would have precluded a finding that the Debtor be denied a discharge. The dishonest answer provided by Debtor coupled with the Debtor's cavalier casual attitude toward the importance of an accurate, complete and honest answer to question 12(b) equates to knowingly and

**2.** *See, In re Melnick,* 360 F.2d 918 (2d Cir.1966) (debtor denied discharge for failing to reveal a real estate transfer which netted $273.72 after the payment of mortgages); *Mazer v. United States,* 298 F.2d 579 (7th Cir.1962) (discharge denied for failure to disclose candy worth $150);

*In re Zidoff,* 309 F.2d 417 (7th Cir.1962) (discharge denied for failure to report furniture worth roughly $400).

**3.** Deuteronomy 15:1 & 2.

fraudulently making a false oath on a material matter. The dishonest answer precludes this Court from granting a discharge to the Debtor.

### ORDERS

IT IS HEREBY ORDERED that the Complaint of The First National Bank of Mason City, Iowa, is sustained.

IT IS FURTHER ORDERED that the Debtor, Thomas Howard Cook, is denied a discharge in bankruptcy due to his false oath in violation of 11 U.S.C. § 727(a)(4)(A).