In re Christa CHAMBERS, a/k/a Christa Von Schumann, Debtor.

BANK OF COWETA and Gus L. Wood, Plaintiffs,

v.

Christa CHAMBERS, a/k/a Christa Von Schumann, Defendant.

Bankruptcy No. 79–00265N.
Adv. No. 80–0003N.

United States Bankruptcy Court,
N. D. Georgia,
Newnan Division.

March 10, 1981.

James C. Stripling, Newnan, Ga., for Christa Chambers.

Joseph P. MacNabb, Newnan, Ga., for Bank of Coweta and Gus Wood.

HUGH ROBINSON, Bankruptcy Judge.

### ORDER

Plaintiffs' objections to the discharge of the debtor and to the dischargeability of a debt bring the matters involved herein before the Court. Oral and documentary evidence was presented at the duly scheduled hearing of July 22, 1980. Having considered the evidence adduced at trial, the arguments and briefs of the parties and the pleadings on file, the Court makes the following decision.

### FINDINGS OF FACT

The defendant, Christa Chambers, ("Defendant"), filed a petition under Chapter 7 of Title 11 of the United States Code on November 6, 1979. Plaintiff Bank of Coweta, ("the Bank"), and Gus L. Wood, ("Wood") commenced the instant adversary proceeding objecting to the dischargeability of a debt and to the general discharge of Defendant. The Bank alleges that a certain loan debt owed by Defendant to the Bank is nondischargeable under 11 U.S.C. § 523(a)(2)(A) and (B). Plaintiff Wood and the Bank jointly object to the general discharge of Defendant under 11 U.S.C. § 727(a)(2)(A) and 727(a)(4)(A). A hearing on the complaint was held before the Court on July 1, 1980.

Pursuant to an employment contract entered into by Defendant and Bleyle of America, ("Bleyle"), a German corporation, Defendant was to be the manager for a new plant to be opened by Bleyle in Coweta County. During the summer of 1977 Defendant had several meetings with Mr. Scott Wilson, ("Wilson"), president of the plaintiff bank, regarding establishing an account with the Bank for Bleyle.

In August of 1977 Defendant applied for a loan from the Bank for the purpose of making a down payment on a house. Defendant was interviewed by Wilson concerning her financial affairs. Answers to the questions posed by Wilson were written down in pencil on a bank form labeled "Personal Financial Statement". Subsequently the penciled entries were typed on a copy of the same form which was previously signed by Defendant. Defendant was fully informed as to, and had no questions about, this process of transcribing the notes of Wilson. With the exception of one item not germane to this proceeding, the figures which appeared on the signed and typed financial statement were the same figures which Defendant had given Wilson in response to his questions.

During the interview Defendant advised Wilson that she was involved in a suit pending in West Germany against her former husband. Defendant stated that, if successful, she could recover as much as $200,000.00. This sum was listed as an asset on Defendant's financial statement. Shortly after the interview Defendant abandoned the suit due to the prohibitive cost of maintaining the action. The bank was advised of her decision to abandon the suit sometime in 1978.

At the time of the interview Defendant was the plaintiff in a law suit against the First National Bank of Cobb County for wrongful dishonor of a check. Defendant told Wilson that should she recover in her suit, the proceeds would be applied to the payment of the loan debt. However, no assignment of Defendant's claim was taken by the Bank.

In January of 1979 Defendant's suit against the First National Bank of Cobb County was settled for $7,000.00 from which Defendant received $4,511.25 after attorney's fees and costs were deducted. Upon the advice of her attorney, Debtor did not inform the Bank of the settlement. Defendant was heavily in debt after her business failed in November, 1978, and she was unemployed during this time. She used the proceeds from the settlement to pay taxes assessed on her business, AMEI Trade Corporation, to pay medical expenses incurred as a result of illness and to pay living expenses for herself and her minor child.

On October 21, 1977 the Bank made an unsecured loan to Defendant for the sum of $5,500.00. The note evidencing the loan was renewed several times, the last renewal occurring on July 31, 1979. Wood guaranteed another debt owed by Defendant to the Bank.

Defendant filed a petition under Chapter 7 of the Bankruptcy Code on November 6, 1979. In question 12a of her Statement of Affairs Defendant indicated that no gifts had been made during the year immediately preceding the filing of her petition; and in question 12b she indicated that she had not made any other transfers of tangible property within the previous year. Several items were omitted from the original petition and schedules.

On January 16, 1980 Defendant amended her schedules to disclose the following:

(1) In December, 1978 Defendant made a gift to her son, a resident of West Germany, of jewelry valued at $3,000.00 when purchased.

(2) In September, 1979 Defendant gave her daughter, also a resident of West Germany, a damaged fur coat that was originally purchased for $5,000.00.

(3) In November, 1978 Defendant sold a chest and a gold ring having a collective value of $750.00 to Jane Pate for $500.00.

(4) In November, 1978 Defendant sold jewelry valued at $5,000.00 when purchased to Harold Chastain for $2,000.00.

(5) Defendant became a party to a garnishment action in Fulton County which arose after the original petition was filed.

(6) On January 29, 1979, Defendant settled a suit against the First National Bank of Cobb County for the sum of $7,000.00.

At the hearing and in response to interrogatories filed by the plaintiffs, Defendant disclosed that in November, 1978 she gave a fourteen carat gold Swiss watch to Pam Helton. The gift was not mentioned either in the original petition or the subsequent amendment. Defendant also revealed that she owned a gold brooch, a pin and a watch collectively valued at $500.00 and a china cabinet valued at $450.00 which were never included in her bankruptcy schedules. In December, 1978 a crocodile pocketbook valued at $250.00 was stolen from Defendant. The existence of the purse and its theft were not disclosed by Defendant in her original or amended schedules. Finally, Defendant failed to disclose in either her original or her amended petition that she was a party plaintiff to a pending suit in Germany for alimony.

At the hearing it was stipulated by the parties that Defendant signed her original bankruptcy petition as well as the subsequent amendment under oath.

## APPLICABLE LAW

### Claim Based on 11 U.S.C. § 523(a)(2)(A) and (B)

Section 523(a)(2)(A) and (B) provide as follows:

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;
. . ."

The court will first address the Bank's charge that Defendant obtained a loan through false representations. It is contended that Defendant falsely represented that the loan would be paid from the proceeds of her suit against the First National Bank of Cobb County.

■ A false representation or false pretense under 11 U.S.C. § 523(a)(2)(A) must be of a kind involving moral turpitude or intentional wrong. 3 *Collier on Bankruptcy* (15th Edition), ¶ 523.08[4], p. 523–39. From reviewing Defendant's testimony this Court is convinced that Defendant made the representation in question in good faith and with the honest intention of following through on her promise. It is true that Defendant failed to inform the Bank of the settlement of her suit, and she used the money recovered for purposes other than the payment of her loan debt. However her failure to apprise the Bank of the settlement was not the product of fraudulent design; Defendant was acting on the advice of her attorney. The record indicates that at the time Defendant received the proceeds of the settlement she was experiencing severe financial problems. The money was needed to pay the living expenses of Defendant and her minor son and to pay medical bills Defendant incurred due to injuries suffered in an accident. Defendant's actions subsequent to the loan transaction simply do not prove that at the time Defendant promised to apply the proceeds of her lawsuit to the payment of the loan debt she had no intention of doing so. Accordingly the Court concludes that the plaintiffs' objection to dischargeability based on 11 U.S.C. § 523(a)(2)(A) cannot be sustained.

■ The Bank also alleges that Defendant obtained the loan and subsequent renewals thereof by use of a materially false financial statement made by Defendant with intent to deceive on which the Bank reasonably relied in making the loan to Defendant. It is contended that the inclusion of Defendant's $200,000.00 alimony claim in her list of assets rendered the financial statement prepared by the Bank materially false. There is conflicting evidence as to the strength of Defendant's conviction that she could successfully prosecute her claim. Wilson's testimony indicates that Defendant expressed considerable confidence in her chances of recovery. Defendant testified that she informed Wilson only that she might recover. Regard-less of the positive or negative nuances in Defendant's statements to Wilson, this Court finds that the financial statement was not materially false. The information from which the financial statement was prepared was supplied by Defendant in August, 1977. Defendant's testimony indicates that she was in Germany in June or July of 1977. While in Germany Defendant contacted a lawyer about prosecuting her alimony claim. In September, 1977, after Defendant's interview with Wilson, Debtor received a letter from her attorney in Germany concerning her claim. It was after she received this letter that Defendant decided to abandon her efforts to recover alimony. Therefore at the time the interview with Wilson occurred, Defendant accurately stated that she had a claim for alimony against her ex-husband. The Court rejects the Bank's argument that Defendant's subsequent abandonment of her claim rendered the financial statement materially false.

Because the Court finds that Defendant's financial statement is not materially false a vital element of 11 U.S.C. § 523(a)(2)(B) is not present in this case. The absence of this element alone is sufficient to mandate the conclusion that the Bank's objection under this section cannot be sustained. However, for the record this Court states its conclusion that the Bank failed to prove any intent to deceive on the part of Defendant.

### Objection Based on 11 U.S.C. § 727(a)(2)(A)

Section 727(a)(2)(A) of the Bankruptcy Code reads:

"(a) The court shall grant the debtor a discharge, unless

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; ..."

The plaintiffs contend that Defendant made several transfers during the year preceding the filing of the petition with the purpose of hindering and defrauding the trustee in this case.

At the hearing Defendant admitted making several transfers in the year prior to the filing of her bankruptcy petition. Defendant made a substantial gift of jewelry to her son who is a resident of West Germany. It was Defendant's understanding that she was required by German law to contribute to the financial support of her son. In an effort to comply with this requirement Defendant gave her son jewelry of a substantial value. Defendant gave a fur coat to her daughter. According to Defendant's testimony she could no longer wear the coat due to a gain in weight. She further testified that the coat had been damaged by water, but her daughter felt that it could be salvaged. Because her daughter felt that the coat was still usable Defendant gave it to her. During the year preceding the filing of her petition, Defendant sold a chest and a gold ring to Jane Pate and sold jewelry of substantial value to Harold Chastain. Defendant testified that she made these sales to obtain money to pay her living expenses. In November, 1978 Defendant gave a fourteen carat gold Swiss watch to a friend as a token of appreciation for assistance the friend had given to her. Defendant testified at the hearing that these transfers were not made for the purpose of hiding her assets.

■ This Court had the opportunity to observe the general demeanor of Defendant at trial and from this observation concludes that Defendant testified truthfully as to her purpose in making the subject transfers. There is no indication that the true purpose of these transfers was to hinder and defraud the bankruptcy trustee. Accordingly the Court concludes that the plaintiffs' objection to discharge based on 11 U.S.C. § 727(a)(2)(A) is without merit.

*Objection Based on 11 U.S.C. § 727(a)(4)(A)*

The plaintiffs contend that Defendant made a false oath with regard to the veracity of her petition and therefore should be denied a discharge under 11 U.S.C. § 727(a)(4)(A). This section reads:

> "(a) The court shall grant the debtor a discharge, unless—
>
> (4) the debtor knowingly and fraudulently, in or in connection with the case—
>
> (A) made a false oath or account; . . . "

Defendant failed to disclose in her bankruptcy schedules a number of matters which are set forth in detail in this Court's findings of facts. At the hearing Defendant offered explanations for these omissions. According to Defendant's testimony she failed to tell her attorney of her gifts to her children and Pam Helton, her sale of a gold ring and a chest to Jane Pate and the theft of her crocodile purse because of her misapprehension as to what matters must be disclosed on a bankruptcy petition. With regard to the sale of jewelry to Harold Chastain, Defendant erroneously thought that the transaction occurred more than a year prior to the filing of her bankruptcy petition. The suit against First National Bank of Cobb County was disclosed to Defendant's attorney prior to the filing of the petition. In his haste to get the petition filed Defendant's attorney neglected to include the lawsuit in the schedules. The garnishment proceeding arose after the filing of the petition and therefore could not have been included in the schedules originally filed. Defendant's gold brooch was not listed as an asset because she forgot about it.

■ The Court reiterates its conclusion from observing the Defendant's general demeanor at trial that Defendant testified truthfully. Defendant's bankruptcy schedules were inaccurate due to the aforementioned omissions and Defendant did sign a statement under oath to the effect that the matters contained in the petition were true according to the best of her knowledge, information and belief. However, this Court believes Defendant's explanations for the omissions in question and therefore cannot conclude that Defendant made the oath

knowingly and fraudulently. It is the conclusion of this Court that the plaintiffs' objection under 11 U.S.C. § 727(a)(4)(A) is without merit and cannot be sustained.

### CONCLUSIONS OF LAW

1. Defendant did not obtain a loan from the Bank through false pretenses or false representations. Therefore the debt owed by Defendant to the Bank is not nondischargeable under 11 U.S.C. § 523(a)(2)(A).

2. Because all of the elements of 11 U.S.C. § 523(a)(2)(B) are not present in this case the debt owed by Defendant to the Bank is not nondischargeable under this provision.

3. Defendant did not transfer her assets with the intent to hinder and defraud the bankruptcy trustee. Therefore this Court may not deny Defendant's discharge under 11 U.S.C. § 727(a)(2)(A).

4. Defendant did not knowingly and fraudulently make a false oath. Therefore this Court may not deny Defendant's discharge under 11 U.S.C. § 727(a)(4)(A). It is therefore

ORDERED that the debt owed by Defendant to the Bank shall be and same is hereby discharged; and it is further

ORDERED that Defendant shall be and is hereby granted a discharge of her debts.