### In the Matter of Trudy MURRAY, Debtor.

### Paul SHIFLETT, Plaintiff,

### v.

### Trudy MURRAY, Defendant.

**Bankruptcy No. 3–82–02591.**
**Adv. No. 3–82–0727.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

Oct. 1, 1984.

James S. Armstrong, Dayton, Ohio, for plaintiff.

Brian C. Petroziello, Dayton, Ohio, for defendant.

## DECISION

ELLIS W. KERR, Bankruptcy Judge.

The complaint objects to discharge alleging intent to defraud creditors, transfer or removal or concealment of property within one year before and also after the date of filing the petition. Also alleged was knowingly and fraudulently making false oath and account concerning the nature, amount and value of property.

The answer denied those allegations. A "Pre-Trial Statement", signed by attorneys for both parties, was filed. This is referred to as stipulations.

A trial was held. A Memorandum was submitted on behalf of each party.

The stipulations referred to facts in dispute and the legal issues. The facts in

dispute were the allegations and denials in the pleadings and whether property in possession of the defendant was hers or that of another party.

## FACTS

It was agreed defendant owes plaintiff $3,000.00 plus interest.

The bankruptcy petition was filed September 14, 1982. Schedule B2 does not list property which the defendant had received from her father.

The Statement of Affairs lists three items being held for her father.

The plaintiff and defendant had previously lived together.

Schedule B2 did not list a diamond ring.

The *plaintiff testified* that when he lived with the defendant she had three bedrooms furnished, new furniture in the living room, a television, a record player, antique glassware, ultra suede coat, lots of jewelry and one bedroom equipped as an office and that the jewelry had a value more than the $200.00 listed in Schedule B2.

He further testified he went to Pennsylvania with the defendant to pick up property that "he was led to believe" had been given to her; that he was present two or three times in Pennsylvania when defendant and her father discussed the household goods; that defendant and her sisters had arugments and their father told the defendant to get the items out—that they were hers; that the discord was as to division of property.

The *defendant testified* that when she and the plaintiff were living together the agreement was that they share expenses but at the time she filed her bankruptcy petition she had spent more than the plaintiff and that at that time she gave her attorney a list of all of her household goods.

She further stated that her father had been married to one Charlotte who died in 1979 and one year later he married Dorothy; that defendant's sister did not want Dorothy to use what had been Charlotte's; that the sister made a phone call to their father which upset him and he told the defendant to get the household goods out of his sight; that at one time her father, Dorothy, the plaintiff, the sister and the defendant were all present when there were discussions as to their family problems.

As to the diamond ring, she testified that while she was in Florida the setting in the ring had been lost before the bankruptcy petition was filed.

*Florence Thompson testified* that she had known the defendant as a friend for six years; that she had visited the defendant at the address listed in the petition; that defendant had items not listed in the schedules such as milk glass, cut glass and brass; that several times she went to Pennsylvania with the defendant to her father's home; that the father wanted to get decided the division of property of his deceased wife between the sisters; that there was no discord; and that they brought back vases, dishes, milk glass and a chair.

## CONCLUSIONS

Plaintiff and defendant both testified as to the discord and arguments in Pennsylvania as to the division of property some of which defendant brought back home. It is obvious from the testimony of Thompson that she was not present at the discussion that did involve discord. Whether the father meant by telling the defendant to get the household goods out of his sight he wanted them to be hers and whether she merely took them "in trust" until her father "cooled off" need not be determined. Even if the latter the defendant should have listed all such property in paragraph 6 of the Statement of Affairs. But the plaintiff did not sustain the burden of proof that by not so doing the defendant intended to deceive creditors.

The defendant testified that at the time the Statement of Affairs was prepared she thought the statements were true; that it was only later she learned that her father intended that what property she took was to be considered hers and at the time of the trial she so considered it. Taking into con-

sideration other testimony this explanation of defendant was plausible.

The defendant to show that she had no intent to conceal property testified that when an appraisal of her property was made in January, 1983 she included an umbrella stand, end tables, an old trunk, and all other property she had, and revealed some items had been given to the Salvation Army because cost of moving them would exceed the value which she considered to be $175.00.

The complaint alleges the defendant with intent to defraud creditors; transferred, removed or concealed property. As to this having application to defendant's change of addresses the following is pertinent. At the time of filing the petition, September 14, 1982, her address was 5430 Montgomery Square Drive, Kettering, Ohio, 45440. At the time of the trial she testified her address was 5519 South Gilmore Road, Fairfield, Ohio; that she had been there two months. On December 14, 1982 there was filed in the estate case by her attorney, Lee, notice that her address effective December 1, 1982, was 3 South Applewood Court, Fairfield, Ohio, 45014.

It should also be pointed out that when the bankruptcy petition was filed the attorney was Piergies of Hyatt Legal Services; that on December 13, 1982 there was filed in the estate case an "Entry" that Brenda J. Lee was substituted for Piergies. The same substitution was made in this adversary proceeding by "Entry" filed April 20, 1984. It listed Lee as also of Hyatt Legal Services. Without any similar "Entry" being filed in this case indicating substitution of counsel Attorney Petroziello of Hyatt Legal Services represented the defendant at the trial and filed the memo of the defendant in this case. This change of attorneys could have resulted in a lack of proper communication between the defendant and her attorneys which, in turn, could have caused problems in properly informing the court of changes in addresses. Such change of attorneys even caused lack of proper communication between the attorneys and this court which made necessary a special order of June 25, 1984.

■ The memo of the defendant states defendant did not want to make public her new address because of anonymous phone call and letter. Plaintiff chose not to file a reply brief contesting this. Even assuming it not to be true the plaintiff failed to sustain the burden of proof that the change of addresses was an attempt to conceal property.

Whether the failure to list in the schedules property she had and did not list are matters next to be considered.

The testimony is conflicting. The plaintiff testified she had such property. The defendant testified she listed all such property and listed the values as what she thought to be values except some records 25 to 30 years old, some of which are classical. Plaintiff had no testimony to indicate the value, if any.

Schedules B2e lists wearing apparel as having value of $200.00. Defendant testified she had two fur coats and four or five suits. There was no evidence to support the claim that she had more and only the testimony of the plaintiff that the value was in excess of $200.00.

The value of second-hand clothing is very nebulous.

The plaintiff presented no proof of any sale by, or transfer by way of gift or otherwise by the defendant of property which she had and failed to list.

■ Even taking into consideration the testimony of the plaintiff and of Thompson as to property the defendant had at one time, but was not listed in the schedules, the burden was on plaintiff to prove there was a transfer or concealment with intent to deceive creditors. That burden was not sustained.

The memo of the plaintiff places emphasis on the testimony of plaintiff and Thompson of a "great deal of property which she first failed to list in her schedules and second moved to Butler County". Importance was attached to the "insider" position of these witnesses who would know what others could not and commented on removal of "all of her property"

to Butler County where it was commingled with the property of Ron Gray.

If the defendant at any time had all the property plaintiff and Thompson testified she had, it was never made clear that she had it within one year of her filing her bankruptcy petition or what property she had at the time she moved to Butler County. There was no satisfactory testimony as to what happened to the property within one year prior to the filing of the petition and after that. There was a conflict in the testimony. The plaintiff had the burden of proving his allegations. There was a failure to sustain the burden.

At the trial it was evident that the feelings between the parties was not pleasant. Plaintiff had testified that from June to March he had lived with the defendant; that he had his children there; that he and defendant split expenses; that he moved out because he thought she was trying to end the relationship; that defendant had sent him a letter that she had paid $8,500.00 and he only $3,000.00; and that there was a $20,000.00 difference in their incomes. As already mentioned, the defendant had testified that the agreement was that they share expenses but that she had spent more than he.

The plaintiff is listed in Schedules A3 as a creditor for an August, 1981 personal loan in the amount of $3,000.00. There was not any explanation of why defendant considered she owed plaintiff this amount when the testimony of both parties indicated that defendant claimed plaintiff owed her money in regard to a split of living expenses.

■ As to whether the defendant made false oath and account concerning the nature, amount and value of her property there was a transposition of creditors in Schedules A2. We conclude the error was obvious and not sufficient to be considered a false oath.

As to the failure to make proper account of some property we merely summarize conclusions already made that plaintiff did not sustain the burden of proof to permit a finding in his favor as to this.

The property in the possession of the defendant was hers.

The Pre-Trial Statement (Stipulations) list three legal issues in dispute.

The first is if defendant concealed the property, etc., and plaintiff can now prove there is additional property, does the fact that the concealed property, etc., is exempt allow defendant to obtain her discharge regardless of the concealment, etc.

As to this the court has already concluded that if there were any concealment it was not with intent to defraud such as to require a denial of discharge. Therefore, whether exempt or not is a matter that is moot.

The second legal issue is if there is a finding of fraud and the creditor is not prejudiced by it, does the plaintiff have standing to object.

Having concluded that the plaintiff failed to sustain the burden of proof as to fraud such as would require a denial of discharge there is no need to determine if creditor is prejudiced or if plaintiff has a standing to object.

The third legal issue is if there is a finding of fraud, is the court's only remedy to deny the discharge to the defendant.

There being no finding of fraud no further comments need be made.

There is no need to discuss the code provisions or case law. Their application to the facts needs comment only to the extent to conclude that this case must be determined on the facts and failure of plaintiff to sustain the burden of proof.

But comments are made on cases cited.

### Cases Cited by Plaintiff

*In re Tabibian* 289 F.2d 793 (2nd Cir. 1961) held that erroneous statements must have been fraudulent; that the explanation as to not listing assets was plausible. The referee approved discharge. District court reversed but was reversed by Second Circuit Court of Appeals. The objectors had obtained two judgments against the bankrupt who operated a rug and carpet compa-

ny, had transferred his headquarters to his house and his business to a new corporation owned by his wife with nothing paid for assets turned over, according to the objectors objecting to discharge who had filed twelve specifications of which three had been proved according to the District Court but there was no showing that there were assets turned over and the Circuit Court obviously thought what was done was not with fraudulent intent.

*In re Diodati* 9 B.R. 804 (Bkrtcy.Mass. 1981) the Bankruptcy Court held that debtor's false statements in his schedules and statement of affairs were knowingly and fraudulently made, or were made with reckless disregard for their truth, and the debtor was thus not entitled to a discharge in bankruptcy; individually, any one answer may have been the result of an innocent mistake as claimed by the debtor, but the cumulative effect of all the falsehoods together evidenced a pattern of recklessness and cavalier disregard for the truth serious enough to supply the necessary fraudulent intent to bar a discharge, notwithstanding the debtor's invocation of his generalized lack of formalized education as a mitigating factor.

But the cumulative effect of falsehoods in that case can in no way be considered similar to the few alleged falsehoods in the instant case. In that case:

(1) Debtor listed no secured creditors but the Malden Trust Company held two outstanding mortgages with substantial balances.

(2) Debtor said no person held anything of value in which he had an interest. In fact, various bank accounts were held by the Debtor's spouse in trust for the Debtor.

(3) Debtor denied assignments. In fact, the Debtor did assign and transfer a $15,-000 bank account held in trust for him to the Malden Trust Company, on August 17, 1979, well within the two years prior to the filing of the Petition.

(4) Debtor listed "no" to gambling debts. In fact, the Debtor sustained gambling losses of $300.00 in 1979.

(5) Debtor listed "none" to loan repayments but made payments on two loans.

(6) As to business within six (6) years Debtor failed to make any mention of Valid Restoration Corporation, a building construction corporation of which the Debtor was president, a member of its board of directors, and shareholder, owning all of the outstanding shares. Nor did he include this information in response to questions which require information about any corporate or partnership interests of the Debtor.

(7) Debtor listed "no" as to property in the hands of a receiver. In fact, a receiver was appointed to oversee the business of Valid Restoration Corporation on February 16, 1977 by the Middlesex Superior Court. The Debtor was President, Director and owner of all 200 shares of the outstanding stock of the corporation and the Receiver was still in place at the time the Debtor filed his Petition.

*In re Mazzola* 2 C.B.C. 242 is similar to *Diodati* in failure to properly list such things as being a stockholder in a corporation, attachments, transfers of real estate and proceeds of sales.

But, here again, although we have no disagreement as to the law cited we conclude it is the application of the law to the facts of a case that controls and that the facts in the instant case are such that the case law of cases cited is not applicable to the instant case.

*In re Mascolo* 505 F.2d 274 (1st Cir.1974) the bankrupt failed to list a bank account he maintained within two years preceding his filing. He did not claim he had forgotten the accounts or that he had not realized he was to include accounts closed at the time of filing.

The facts are in no way similar to those in the instant case. There was a question as to assets having been listed in a corporate bankruptcy. The case is replete with citations to other cases which are distinguished—a further example that it is not so much a question of law as it is the application of the law to the facts in each case.

The court recognized that omission of an irrelevant matter or of property having no value is not necessarily fatal but found the statements of the bankrupt did not fall into that narrow category.

There were so many things involved in this case that it resulted in findings pertaining to common law perjury, burden of proof, lack of abuse of discretion by the referee, presumption that findings of a referee presumed correct.

*Diorio v. Kreisler-Borg Const. Co.* 407 F.2d 1330 (2d Cir.1969) is a case where discharge was denied on the basis that denials by bankrupt that he had any interest in or had been an officer of corporation were knowingly and fraudulently false.

The findings were based not only upon statements in the schedules but in those made on examination of the bankrupt. The opinion is very short. There is little summarizing of evidence but it is clear that the Circuit Court found that evidence, whatever it was, supported the District Judge's directing that discharge be denied.

### Cases Cited by Defendant

*Avallone v. Gross* 309 F.2d 60 (2nd Cir. 1962) is just another example of facts upon which the referee based his decision granting a discharge—affirmed by District Court and Second Circuit Court of Appeals. Involved was an automotive parts business and failure to properly list income and bank accounts. Considered were not only the schedules and statement of affairs but testimony at the first meeting of creditors and a Section 21a examination. After consideration of all it was found there was no intent to defraud.

*In re Chambers* 10 B.R. 92 (N.D.Georgia 1981) the defendant applied for a loan from a bank to make a down payment on a house. During the interview Defendant advised that she was involved in a suit pending in West Germany against her former husband. Defendant stated that, if successful, she could recover as much as $200,000.00. This sum was listed as an asset on Defendant's financial statement. Shortly after the interview Defendant abandoned the suit due to the prohibitive cost of maintaining the action. The bank was advised of her decision to abandon the suit.

At the time of the interview Defendant was the plaintiff in a law suit against the First National Bank of Cobb County for wrongful dishonor of a check. Defendant told that should she recover in her suit, the proceeds would be applied to the payment of the loan debt. However, no assignment of Defendant's claim was taken by the bank. Defendant's suit against the bank was settled. Upon the advice of her attorney, Debtor did not inform the Bank of the settlement.

In question 12a of her Statement of Affairs Defendant indicated that no gifts had been made during the year immediately preceding the filing of her petition; and in question 12b she indicated that she had not made any other transfers of tangible property within the previous year. Several items were omitted from the original petition and schedules.

At the hearing and in response to interrogatories filed by the plaintiff's, Defendant disclosed that she gave a fourteen carat gold Swiss watch to Pam Helton. The gift was not mentioned either in the original petition or the subsequent amendment. Defendant also revealed that she owned a gold brooch, a pin and a watch collectively valued at $500.00 and a china cabinet valued at $450.00 which were never included in her bankruptcy schedules. A crocodile pocketbook valued at $250.00 was stolen from Defendant. The existence of the purse and its theft were not disclosed by Defendant in her original or amended schedules. Finally, Defendant failed to disclose in either her original or her amended petition that she was a party plaintiff to a pending suit in Germany for alimony.

Of all cited cases this is the only one where facts are similar to those in the instant case as to items not scheduled. It is important to note the findings of the judge as to these omissions-even to the extent of going into details. These include the following:

(1) At the hearing Defendant admitted making several transfers in the year prior to the filing of her bankruptcy petition. Defendant made a substantial gift of jewelry to her son who is a resident of West Germany. It was Defendant's understanding that she was required by German law to contribute to the financial support of her son. In an effort to comply with this requirement Defendant gave her son jewelry of a substantial value. Defendant gave a fur coat to her daughter. According to Defendant's testimony she could no longer wear the coat due to a gain in weight. She further testified that the coat had been damaged by water, but her daughter felt that it could be salvaged. Because her daughter felt that the coat was still usable Defendant gave it to her. During the year preceding the filing of her petition, Defendant sold a chest and a gold ring to Jane Pate and sold jewelry of substantial value to Harold Chastain. Defendant testified that she made these sales to obtain money to pay her living expenses. Defendant gave a fourteen carat gold Swiss watch to a friend as a token of appreciation for assistance the friend had given to her. Defendant testified at the hearing that these transfers were not made for the purpose of hiding her assets.

This Court had the opportunity to observe the general demeanor of Defendant at trial and from this observation concludes that Defendant testified truthfully as to her purpose in making the subject transfers. There is no indication that the true purpose of these transfers was to hinder and defraud the bankruptcy trustee. Accordingly the Court concludes that the plaintiff's objection to discharge is without merit.

(2) Defendant failed to disclose in her bankruptcy schedules a number of matters which are set forth in detail in this Court's findings of facts. At the hearing Defendant offered explanations for these omissions. According to Defendant's testimony she failed to tell her attorney of her gifts to her children and Pam Helton, her sale of a gold ring and a chest to Jane Pate and the theft of her crocodile purse because of her misapprehension as to what matters must be disclosed on a bankruptcy petition. With regard to the sale of jewelry to Harold Chastain, Defendant erroneously thought that the transaction occurred more than a year prior to the filing of her bankruptcy petition. The suit against First National Bank of Cobb County was disclosed to Defendant's attorney prior to the filing of the petition. In his haste to get the petition filed Defendant's attorney neglected to include the lawsuit in the schedules. The garnishment proceeding arose after the filing of the petition and therefore could not have been included in the schedules originally filed. Defendant's gold brooch was not listed as an asset because she forgot about it.

The Court reiterates its conclusion from observing the Defendant's general demeanor at trial that Defendant testified truthfully. Defendant's bankruptcy schedules were inaccurate due to the aforementioned omissions and Defendant did sign a statement under oath to the effect that the matters contained in the petition were true according to the best of her knowledge, information and belief. However, this Court believes Defendant's explanations for the omissions in question and therefore cannot conclude that Defendant made the oath knowingly and fraudulently.

(3) Defendant shall be and is hereby granted a discharge of her debts.

The number of items not listed in *Chambers* far exceeded those in the instant case. But for reasons stated in the opinion discharge of these debts was granted.

For similar reasons and because of failure of the plaintiff to sustain the burden of proof in the instant case the court concludes there must be a discharge of the debts.

We have no disagreement with the law of the cases cited in the briefs of the parties. But we do conclude that the application of such law to the facts in the instant case is questionable; that the facts in the instant case, the demeanor of the witnesses, the testimony, and the evidence require a finding in favor of the defendant.

Entry of Judgment shall be made by a separate instrument.