**In re Charles W. LIGON, Debtor.**

**Bankruptcy No. 384–00616.**

United States Bankruptcy Court,
M.D. Tennessee.

June 3, 1985.

Benjamin S. Dempsey, Jackson, Tenn., for debtor.

William R. O'Bryan, Jr., Trabue, Sturdivant & DeWitt, Nashville, Tenn., for FDIC.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

This is an action by the Federal Deposit Insurance Corporation to impose sanctions on the debtor's counsel pursuant to Bankruptcy Rule 9011. Because the court finds that debtor's counsel signed and filed a Chapter 11 disclosure statement which he knew to contain materially false and misleading information, sanctions against counsel will be ordered.

The following constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A).

### I.

Charles W. Ligon filed a voluntary Chapter 11 petition on March 7, 1984. By application to employ counsel filed April 2, 1984, it was represented to this court that Benjamin S. Dempsey, P.C. "... is well qualified to act as counsel in this matter, he ... being familiar with proceedings under the Bankruptcy Code, and experienced in real estate transactions, litigation and commercial law." The application indicates that prior to the filing of the petition, Mr. Dempsey represented the debtor in "discussions with ... creditors ... preparation ... of the petition, list of creditors and other documents ... and in other matters ...." Benjamin S. Dempsey prepared and signed the petition and schedules. By order of this court, dated April 4, 1984, Benjamin S. Dempsey, P.C. was authorized as counsel for the debtor-in-possession.

The debtor, Charles W. Ligon, is the former president and chief executive officer of the failed Carroll County Bank. In connection with that failure, he was convicted in the United States District Court for the Western District of Tennessee of falsifying documents and misapplication of funds. He is currently incarcerated in the federal prison camp at Leavenworth, Kansas. The schedules and statements describe Mr. Ligon's assets as "unknown" in amount, with total claims of $131,800 and fewer than 13 creditors. The Federal Deposit Insurance

Corporation ("FDIC") in its capacity as Receiver for the Carroll County Bank has filed claims against the debtor in excess of $1.5 million.

On the motion of the FDIC, the 2004 examination of the debtor was conducted on April 6, 1984. Mr. Dempsey was present representing the debtor-in-possession. The transcript of that examination demonstrates active participation by Mr. Dempsey. The debtor was questioned broadly and in great detail about his assets, liabilities and business activities.

On October 2, 1984 a disclosure statement and Chapter 11 plan of reorganization were filed. Both documents are signed by Mr. Dempsey as "attorney for debtor-in-possession."

The three page disclosure statement contained the following "Financial Information Respecting the Reorganized Debtor":

The Debtor's financial condition is such that this would be a no-asset case if it had been filed under Chapter 7.

However, the Debtor owns a 25% stock interest in a Kentucky corporation known as B.E.E.L. Subdivision, Inc. The corporation's financial posture is such that the majority stockholders have agreed to begin issuing stock dividends in the first of 1985. The Debtor's portion will approximate $1,000.00 per month, and these funds will go into the bankruptcy estate to pay all creditors their principal debt in full. These payments will issue on a monthly basis for a ten (10) year period.

Any other financial information will be made available by the Debtor at the Disclosure Hearing as requested by the creditors.

No other financial information was included in the disclosure statement.

The FDIC objected to the adequacy of information in the disclosure statement and moved for appointment of a trustee. The FDIC also requested sanctions pursuant to Bankruptcy Rule 9011[1] against the debtor[2] and Mr. Dempsey alleging that the disclosure statement contained materially false statements and omissions concerning the financial affairs and assets of the debtor. The debtor-in-possession responded to the FDIC's motions by filing a Rule 9011 motion alleging that the FDIC's objections were unfounded and filed merely to harrass. This motion was later dismissed by agreed order.

On December 4, 1984, this court held a hearing on the adequacy of the disclosure statement and the motion to appoint a trustee (hereafter "trustee hearing"). Finding many compelling reasons, on December 7, 1984 we entered an order appointing a trustee pursuant to 11 U.S.C. § 1104. We also found that the disclosure statement did not contain adequate information under the standards of 11 U.S.C. § 1125. A hearing

---

1. Bankruptcy Rule 9011 states in pertinent part:
   (a) Signature. Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, except a list, schedule, statement of financial affairs, statement of executory contracts, Chapter 13 Statement, or amendments thereto, shall be signed by at least one attorney of record in his individual name, whose office address and telephone number shall be stated. A party who is not represented by an attorney shall sign all papers and state his address and telephone number. *The signature of an attorney or a party constitutes a certificate by him that he has read the document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harrass, to cause delay, or to increase the cost of litigation.* If a document is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the person whose signature is required. If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties in the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee. (emphasis added).

2. The FDIC's request for sanctions under Rule 9011 against the debtor was not actively prosecuted.

was held on March 15, 1985 to consider the FDIC's request for sanctions against Mr. Dempsey (hereafter "sanctions hearing").[3]

## II.

Under 11 U.S.C. § 1125(b) a court approved disclosure statement is a prerequisite for solicitation of acceptance or rejection of a plan of reorganization. The disclosure statement is approved when the court, after notice and hearing, finds that it contains "adequate information" as defined in 11 U.S.C. § 1125(a)(1). The written disclosure statement is then distributed to each claimholder or interestholder who will vote on the plan. 11 U.S.C. § 1125(b).

The purpose of the disclosure statement is to provide sufficient information to enable a reasonable and typical investor to make an informed judgment about the plan. S.REP. NO. 989, 95th Cong., 2d Sess. 121, *reprinted in* 1978 U.S. CODE CONG. & AD.NEWS 5787, 5907. While the debtor cannot be expected to unerringly predict the future, the "information to be provided should be comprised of all those factors presently known to the plan proponent that bear upon the success or failure of the proposals contained in the plan." *In re Stanley Hotel, Inc.*, 13 B.R. 926, 8 BANKR.CT.DEC. (CRR) 35, 5 COLLIER BANKR.CAS.2d (MB) 64 (Bankr.D. Colo.1981). Conclusory allegations or opinions without supporting facts are generally not acceptable. *In re Egan*, 33 B.R. 672, 11 BANKR.CT.DEC. (CRR) 476 (Bankr.N. D.Ill.1983); *In re East Redley Corp.*, 16 B.R. 429, 8 BANKR.CT.DEC. (CRR) 806 (Bankr.E.D.Pa.1982).

Knowledge of the debtor's financial condition is essential before any informed decision concerning the merits of a plan can be made. A description of available assets and their value is a vital element of necessary disclosure. *In re Metrocraft Publishing Services, Inc.*, 39 B.R. 567, 10 COLLIER BANKR.CAS.2d (MB) 1182 (Bankr.N.D.Ga.1984); *See In re A.C. Williams Co.*, 25 B.R. 173, 9 BANKR.CT.DEC. (CRR) 1239 (Bankr.N.D.Ohio 1982).

At the sanctions hearing it was made clear to this court that this is not a case where debtor's counsel has signed and submitted a Chapter 11 disclosure statement which merely fails the statutory test for adequate information contained in 11 U.S.C. § 1125(a).[4] Rather, this is a case where debtor's counsel has exceeded the boundaries of appropriate advocacy by signing and filing documents with the bankruptcy court which he had to have known were materially false and misleading. This was hardly a complicated or difficult bankruptcy case. There were only a handfull of creditors and fewer than a half-dozen identifiable assets. Yet, essentially every available asset of the debtor, though revealed to debtor's counsel, was omitted or misrepresented in the disclosure statement.

In the presence of Mr. Dempsey at the 2004 examination in April of 1984, the debtor admitted an ownership interest in rental property in Wilson County, Tennessee. Under questioning by counsel for the FDIC, the debtor testified in detail that he was a 1/3 owner of an unencumbered house and lot valued by the debtor at "twenty five or thirty thousand dollars." The debtor explained that the property was subject to a life estate in his (ailing) mother and that the property is rented and maintained by the debtor's brother. The disclosure

---

3. Mr. Ligon did not testify at the March 15 hearing. The court was informed that he had been incarcerated at Leavenworth, Kansas. Mr. Dempsey argued that Mr. Ligon's testimony was essential to his defense of the Rule 9011 claims. Mr. Dempsey made no effort before the hearing to secure Mr. Ligon's testimony by subpoena or otherwise. The court expressly left the record open for 30 days following the hearing on March 15 to allow Mr. Dempsey the opportunity to present Mr. Ligon's testimony by any available technique. Mr. Dempsey did not avail himself of this opportunity.

4. If such were the case, the proper remedy would be to withhold approval of the disclosure statement and leave the parties to their remedies under the Bankruptcy Code. *See, e.g.,* 11 U.S.C. § 1112(b)(4) and (5) *(grounds for conversion or dismissal)*.

statement, signed by Mr. Dempsey after this testimony by his client, does not reveal the existence or value of this asset but affirmatively describes the estate as containing no assets.

The original schedules filed by Mr. Dempsey identified an "assignment" of a $10,000 asset of the debtor. At the April 2004 examination, Ligon described this asset in detail. The debtor stated that he sold a farm in Wilson County, Tennessee to some "worthy people" named Kaiser who are natives of Wilson County but residing in the Bahamas. He received a note (the "Kaiser note") as part consideration. This note called for ten annual payments of approximately $10,000 each. Three payments were made prior to Ligon's bankruptcy, including a full payment in December, 1983. The debtor stated, again in his counsel's presence, that he was entitled to receive seven additional payments in December of each post-petition year.[5] Mr. Dempsey omitted this asset from the disclosure statement.

Schedule B lists "farm supplies and implements—to be supplied by amendment." The disclosure statement makes no mention of any farm equipment. The debtor had previously been a partner in B & L Farms, a farming partnership, and indicated at the Rule 2004 examination that remnants of this operation still exist.

The FDIC alleges that the debtor has a significant, undisclosed gun collection. Mr. Dempsey claimed that the guns were not scheduled or disclosed because Mr. Ligon told him they had been stolen. (Sanctions hearing at 30–31). Again, at his client's examination under oath before the filing of the disclosure statement, it was revealed that the debtor still owns a gun collection at least one of which was a "collectors' item." The trustee has since brought an action for turnover of an inventory of firearms owned by the debtor.

The disclosure statement demonstrates that Mr. Dempsey was well aware that his client owned a 25% stock interest in an entity called B.E.E.L. Corporation or B.E.E.L. Subdivision, Inc. This asset is valued as "unknown" in the original schedules. At the debtor's 2004 examination it unfolded that B.E.E.L. is a Kentucky corporation that leases, rents and develops housing in the vicinity of Fort Campbell, Kentucky, including mobile homes and modular homes. The debtor testified that the corporation had income of between $8,300 and $10,000 per month, that substantial monthly payments were being made to a bank from the income of the corporation and that the company's debt would be paid off during 1985. The debtor stated that the corporation had "probably thirty units ... that belong to the corporation that we rent on a monthly basis." (2004 exam. at 29). The debtor acknowledged that he had previously valued his investment in B.E.E.L. Corporation at $163,500. Notwithstanding this testimony by his client, Mr. Dempsey "disclosed" in October of 1984 that the debtor's interest in B.E.E.L. would not constitute an asset.

At the sanctions hearing, Mr. Dempsey was asked by counsel for the FDIC to explain each of the omissions from the disclosure statement identified above (and others).[6] Mr. Dempsey's explanations fall

---

5. The trustee has since reported receipt of the December 1984 payment.

6. At the trustee hearing, the court found that no investigation had been made into the possibility that preferences and fraudulent conveyance may have occurred despite the FDIC's substantial allegations of facts which would at least give cause for disclosure. The FDIC claims that both a repossession of property by the Wilson County Bank and a conveyance of the debtor's car to his wife may have been voidable, fraudulent conveyances. No mention of either of these transactions was made in the disclosure statement. At the trustee hearing, we found that the failure to investigate these possible actions was a reason for appointing a trustee. Mr. Dempsey testified that he saw no validity to any fraudulent conveyance or preference action and therefore he felt no need to make disclosure.

The disclosure statement also failed to reveal the existence of a $600 per month annuity the debtor receives from a retirement plan. Mr. Dempsey testified that his examination of the plan caused him to believe the plan was exempt. He did not disclose it because he "did not see that as an asset of the estate." Sanctions hearing at 19.

in three categories: "I didn't remember"; "I didn't think that asset was worth anything"; "I didn't know I had to reveal that." For example, when asked why the disclosure statement failed to mention the interest in rental property in Wilson County, Dempsey answered:

> For two reasons. The first one was I didn't have a copy of the deposition [Rule 2004 examination]. I filled out the disclosure some six months later and I did not recall the given assets. Secondly, it was my understanding that the disclosure statement didn't require that it contain all of the assets of the estate; just the assets of the plan.

Sanctions hearing at 12. As to the Kaiser note, Mr. Dempsey stated his reason for nondisclosure as "Upon investigation I found that it had no value at all." Sanctions hearing at 14. The undisclosed value of the B.E.E.L. stock was dismissed by Mr. Dempsey's "understanding" that it "probably has no value whatsoever."

Bankruptcy Rule 9011, reproduced in the margin above, is available to remedy misconduct by counsel in the preparation of a disclosure statement. As the Advisory Committee noted, the rule applies to all papers not specifically excluded which an attorney or party is required to sign. A disclosure statement is a document covered by this rule.

With a few exceptions not material here, Bankruptcy Rule 9011 tracks the language of FED.R.CIV.P. 11. Prior to amendment in 1983, Rule 11 stated that an attorney's signature on a pleading meant that "to the best of his knowledge, information and belief there is good ground to support it." This language was also found in former Bankruptcy Rule 911. The 1983 Federal Rules Amendments changed the wording of Rule 11 to require that an attorney make "reasonable inquiry" into the facts and law supporting the pleading, motion, or other paper. When former Bankruptcy Rule 911 became new Rule 9011 this change was incorporated. Both the new Bankruptcy Rules and the Amendments to FED.R.CIV.P. 11 took effect on August 1, 1983.

The purpose of the 1983 amendment is stated in the Advisory Committee Notes:

> The new language stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the Rule. The standard is one of reasonableness under the circumstances. *See Kinee v. Abraham Lincoln Federal Savings and Loan Ass'n.*, 365 F.Supp. 975 (E.D.Pa.1973). This standard is more stringent than the original good faith formula and thus it is expected that a greater range of circumstances will trigger its violation. *See Nemeroff v. Ableson*, 620 F.2d 339 (2d Cir.1980).
>
> The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted. Thus, what constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar.

97 F.R.D. 165, 198–199 (1983). These notes are useful guidelines for application of Bankruptcy Rule 9011.

The explanations offered by Mr. Dempsey are insufficient as legal defenses to the Rule 9011 claims of the FDIC. Further, after hearing the witnesses and reviewing the evidence, this court finds counsel's excuses to be unbelievable.

It is obvious to this court that Mr. Dempsey was aware of the omissions and the inaccuracies in the disclosure statement. Mr. Dempsey presents himself as an intelligent man with *no obvious disabilities of*

speech, sight or hearing. He was represented to the court to be experienced in bankruptcy matters. He had heard his own client explain that the Kaiser note had produced and would continue to produce a $10,000 payment each December for seven additional years. He had heard his own client explain that the debtor's interest in the B.E.E.L. Corporation was once valued at $163,500 and the corporation would soon be free of debt. He knew from his own proposed plan of reorganization that the stock in the B.E.E.L. Corporation could produce at least $1,000 a month in dividends for the next 10 years. He knew that his client owned rental property in Wilson County, Tennessee and he knew that the gun collection still existed. This court cannot believe that Mr. Dempsey simply forgot all of these revelations by his client. It is no excuse that Mr. Dempsey chose not to order a transcript of his client's testimony. If nothing else, the shock of the revelations (if they were indeed unknown to Mr. Dempsey at the time of the 2004 examination) would have made impression enough to spur counsel to conduct further examination, and to reflect the "new" assets revealed by the debtor under questioning by the FDIC. Surely, by the time of the filing of the disclosure statement in October of 1984 any well-intending lawyer would have revealed, described, and discussed the rental property in Wilson County, the Kaiser note, the stock in the B.E.E.L. Corporation and the gun collection. We can only conclude that he either intentionally participated in a deception by filing a sham disclosure statement or that he was so reckless in the preparation and filing of this statement as to constitute "hiding his eyes and ears" from the truth. Mr. Dempsey did not make the "reasonable inquiry" required by Rule 9011. There is no good faith argument justifying the omission of major assets and the inclusion of the "no asset" statement. Mr. Dempsey knowingly turned the reorganization of this debtor into a game of hide and seek.

Parties who must use legal process to expose and control a filing in violation of Bankruptcy Rule 9011 are entitled to recover from the offending counsel their reasonable fees and expenses. *In re Hill,* 39 B.R. 599 (Bankr.D.Minn.1984). The cases have uniformly recognized the authority of bankruptcy courts to award Rule 9011 sanctions against attorneys in appropriate circumstances. *See, e.g., Pasadena Thrift and Loan Ass'n. v. Bayport Equities Corp.,* 36 B.R. 575, 11 BANKR.CT.DEC. (CRR) 671, 10 COLLIER BANKR.CAS.2d (MB) 160 (Bankr.C.D.Cal.1983) (filing of multiple petitions merely to delay foreclosure proceedings); *In re Hill, supra.* (an unfounded exemption claim causing delay); *In re Crestwell,* 30 B.R. 619 (Bankr.D.C. 1983) (sloppy, incoherent, incomplete and misleading pleadings); *Reserve Management, Inc. v. Jacobson,* 47 B.R. 476 (D.Colo.1985) (filing frivolous motion to disqualify judge). Applying Rule 9011 to a false disclosure statement is consistent with these authorities and the purposes of the Rule. The FDIC has incurred attorney's fees and expenses attempting to discover the facts in this case and it should be reimbursed.

An inadequate disclosure statement will normally be dealt with by the objection and amendment process provided in Chapter 11. Good faith omissions and mistakes or reliance on a reasonable but erroneous interpretation of the law will not usually be a basis for invoking Rule 9011. Further, there may be situations where a lawyer has been misled or lied to by a debtor. In these instances, the lawyer should not fear sanctions where he has made reasonable and diligent inquiries. However, none of these justifications for inadequate disclosure apply here. This is a particularly egregious case. Where a lawyer has signed a disclosure statement which bears little resemblance to what he knows is the debtor's true state of affairs, we will not hesitate in awarding sanctions.

We have reviewed the FDIC's request for attorney's fees of $2,769 and expenses of $208.20. The fees and expenses appear to be directly related to work caused by the false and misleading documents filed by

the debtor's counsel and are reasonable. An appropriate order will be entered.