**In re Cyril CADET and Frances Cadet, Debtors.**

**Bankruptcy No. 185–51217–21.**

United States Bankruptcy Court,
E.D. New York.

Oct. 15, 1985.

C. Theodore Wellington, Jamaica, N.Y., for debtors.

Stuart P. Gelberg, Glen Cove, N.Y., trustee.

Philip Irwin Aaron, P.C. (Alan B. Mendelsohn, Jericho, N.Y., of counsel), for Standard Federal Sav. & Loan Ass'n.

### OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

Both Stuart Gelberg, Esq., the Chapter 13 Trustee, and Alan B. Mendelsohn, Esq., of the office of Philip Irwin Aaron, P.C., attorney for Standard Federal Savings and Loan Association ("Standard"), have applied for sanctions against the attorney for the debtor, C. Theodore Wellington, Esq.,

pursuant to Bankruptcy Rule 9011, which parallels FRCP 11.

BR 9011 requires every petition or other paper served on behalf of a party represented by an attorney to be signed by that attorney. The attorney's signature "constitutes a certificate by him that he has read the document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harrass, to cause delay, or to increase the cost of litigation.... If a document is signed in violation of this rule, the court, on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee."

The Court held a hearing on the applications for sanctions on August 29, 1985, at which Mr. Wellington appeared, and at which sworn testimony was taken from Yvonne Hoyle, a paralegal employed in the office of Mr. Wellington. Also present at the hearing were Mr. Gelberg and Mr. Mendelsohn, both of whom made statements for the record.

The records of this Court, of which this Court takes judicial notice, and the facts developed at the hearing have disclosed the following facts:

I. The Debtors' Prior Chapter 13 Proceeding:

On February 8, 1984, Cyril Cadet and his wife, Frances Cadet, filed a Petition under Chapter 13 of Title 11 which was assigned No. 184–40220–260. Mr. Wellington represented them in that proceeding and signed the Petition. The Petition reflected mortgage arrears to Standard in the amount of $6,989.78 on the debtors' residence at 303 Nicholas Avenue, Brooklyn, N.Y. ("303

Nicholas"). The debtors' plan proposed to pay off these arrearages under its plan. No real estate was shown on the Petition as owned by debtors other than 303 Nicholas.

The debtors failed to appear for the adjourned confirmation hearing on May 22, 1984, and the proceeding was dismissed. An Order dismissing the Petition was signed on May 24, 1984, and notice thereof was sent, on June 5, 1984, to all parties, including the debtors and Mr. Wellington.

The trustee's Final Report, filed on May 25, 1984, recites that no monies had been paid him by the debtors.

## II.   Standard Forecloses.

During the period between the filing of the 1984 Petition and the present one Mr. Wellington has continued to represent Mr. and Mrs. Cadet in connection with a number of matters. In November, 1984 consideration was given to filing a second Chapter 13 petition and a petition was in fact prepared by the office of Mr. Wellington for the debtors that month, but it was never filed. (Court Exhibit.)

Following the dismissal of the 1984 Petition, Standard initiated foreclosure proceedings against 303 Nicholas and a judgment of foreclosure and sale was entered in the Office of the Clerk of the Supreme Court of the State of New York, County of Kings, on May 16, 1985. Pursuant to that judgment the property was sold at a foreclosure sale on June 5, 1985, at which Standard was the successful bidder. The sale divested the debtors of ownership of 303 Nicholas Avenue and Standard is now engaged in evicting them from that property.

The motion which has led to this application for sanctions was brought by Standard to ensure that the automatic stay arising from 11 U.S.C. § 362 did not impede such eviction.

## III.   The Current Petition.

On August 2, 1985 the debtors filed the present Petition which is signed by each of the debtors and Mr. Wellington and which

has resulted in these applications for sanctions. This Petition contains several omissions and inaccuracies. Furthermore, the relief it purports to seek, the cure of the arrearages to Standard through a Chapter 13 Plan, is unavailable to the debtors, as Mr. Wellington could have ascertained upon reasonable inquiry. It is a fair inference from all the facts that the Petition was not filed in good faith but solely for reasons of delay.

Some of the mistakes and omissions in the Petition are:

(a) Question No. 8, which inquires as to what previous proceedings under the Bankruptcy Code have been brought by either the debtor or his spouse, is not answered. The space for this answer is left blank. Mr. Wellington necessarily knew of the debtors' previous filing since he had represented them in the proceeding which had been dismissed during the previous year. The question should have been answered, not left blank.

(b) In answer to Question No. 5 as to how much the debtors have agreed to pay, and have paid, their attorney, it is indicated that they have agreed to pay, and have, in fact, paid $500.00. However, in the Statement filed by Mr. Wellington, pursuant to Rule 2016(b), the space where the figures as to the compensation paid, or agreed to be paid, are suppose to be inserted is left blank. Mr. Wellington's explanation of the discrepancy between the Petition and the Rule 2016(a) Statement is that he delayed filing the Petition after it was prepared on July 7, 1985 to the date it was filed, on August 2, 1985, in the expectation he would be paid his fee in advance and when it was not forthcoming, he directed that the Petition be filed notwithstanding the absence of payment.

The explanation is inadequate. The answer to Question No. 5(b) in the Petition showing payment should have been corrected. As to the Rule 2016(b) Statement, whether or not payment was received, that Statement should have shown the fee agreed to be paid, $500.00.

(c) The most serious omission concerns Question No. 11. In answer to Question No. 11, relating to transfers of property, which inquires whether any real or personal property has been disposed of during the immediate proceeding year, the Petition states "None". However, Yvonne Hoyle testified that Mr. Wellington represented Mr. and Mrs. Cadet in the sale of certain real estate which they owned, in addition to the property at 303 Nicholas Avenue, and that such sale took place in late 1984 or early 1985. She acknowledged that the answer to Question No. 11 was, therefore, incorrect.

The transfer of the property was necessarily known, not only to the debtors, but also to Mr. Wellington who had represented the debtors in connection with that sale. This false answer withheld significant information from the Chapter 13 trustee, the Court and the debtors' creditors. Neither the previous Petition nor the second one, which was prepared but not filed, disclose any property other than 303 Nicholas Avenue. If the debtors have owned other property, they may have greater assets than they have disclosed.

(d) Other significant misstatements are the answers given to Questions Nos. 14, 9 and 12(b). In response to these questions the Petition describes 303 Nicholas as property owned by the debtors, on which arrearages are owed Standard and which is involved in foreclosure proceedings. If these statements were true, the debtors would have had the right to stay the foreclosure proceeding and cure the arrearages by filing a Chapter 13 petition. *In re Taddeo*, 685 F.2d 24 (2d Cir.1982). But these statements were not accurate; the debtors were no longer the owners of the property; the arrearages were no longer subject to cure, and the Chapter 13 petition could not stay Standard's right to possession of the property which it has bought at the foreclosure sale. *Matter of Cretella*, 47 B.R. 382 (E.D.N.Y.1984), *aff'g* 42 B.R. 526 (B.C. E.D.N.Y.1984); *In re Nimai Kumar Ghosh*, 38 B.R. 600 (B.C.E.D.N.Y.1984). *See In re Acevedo*, 26 B.R. 994, 997 (E.D.N. Y.1982).

The explanation offered for the discrepancy between the Petition and the facts is that the debtors allegedly received no notice of the state foreclosure proceeding or the sale in the state court and only became aware of what had occurred when they were served with a notice of eviction by Standard. Assuming that the debtors did not know the outcome of Standard's foreclosure proceeding, any reasonable inquiry by Mr. Wellington would have disclosed the sale. He would have learned that fact had he examined the records of the court with jurisdiction of the foreclosure proceeding involving that property, or had he inquired of Mr. Aaron, who the Petition identifies as the attorney for Standard. Mr. Wellington had notice that 303 Nicholas was the subject of a foreclosure proceeding since in answer to Question No. 9 which inquires as to whether any property is subject to foreclosure, the following reply is given: "FORECLOSURE—303 Nicholas Avenue, Brooklyn, New York."

Yvonne Hoyle attempted to explain this entry as based on her confusing 303 Nicholas with certain other property which allegedly had been involved in a foreclosure proceeding. According to her, she had fallen into this error in preparing the second Petition which was never filed and carried it over to the present Petition. But the Petition prepared in November, 1984 shows no property other than 303 Nicholas. Furthermore, it shows that the office of Mr. Aaron was already representing Standard. Indeed, in connection with the preparation of that earlier and unfiled Petition, she admits telephoning Aaron's office to ascertain the exact amount of the arrears on 303 Nicholas. If she had done the same before filing the present Petition, she would have learned that the property had been sold.

It is clear that any reasonable inquiry by Mr. Wellington would have disclosed that 303 Nicholas was the property of Standard when the Petition was filed, and the object of the Chapter 13 Plan, saving the property for the debtors, could not be realized, un-

less the judgment of sale and the sale were vacated.

### IV. Events Since the Chapter 13 Petition Was Filed.

Following the filing of the Chapter 13 Petition, this Court entered an Order requiring the debtors to remit to Mr. Gelberg, as the Chapter 13 Trustee, the sum of $611.54 no later than ten days after the date of such Order, August 2, 1985. This represents the first payment under the debtors' plan. So far as the Court is aware, no payments have as yet been received by Mr. Gelberg.

The notice to creditors sent out on the filing of the Petition fixed the date of the creditors' meeting under Section 341 as August 26, 1985. On that date neither the debtors nor their attorney, C. Theodore Wellington, Esq., appeared.

As a result of the filing of the Petition, it was necessary for Standard to apply to vacate the automatic stay imposed by 11 U.S.C. § 362 so that it could proceed with its eviction proceeding.

The Chapter 13 Trustee, Mr. Gelberg, on receiving Standard's motion, cross-moved to dismiss or to convert the case pursuant to 11 U.S.C. § 1307 and for costs and sanctions pursuant to Bankruptcy Rule 9011 and 28 U.S.C. § 1927. Mr. Gelberg pointed out that because the sale of the premises had taken place in advance of the filing, the Chapter 13 proceeding would be of minimal benefit to the debtors.

At the hearing on these motions, an associate employed in the office of Mr. Wellington appeared with Mr. Cadet. He stated that he had been advised that it was Mr. Wellington's intention to try to set aside the sale of 303 Nicholas to Standard on the ground that no service had been made of the debtors in the foreclosure proceeding.

The Court ruled that it would not entertain any collateral attack on a judgment of sale entered in the Supreme Court and that any proceeding to set that judgment aside would have to be brought in that court. Further, the Court noted that no steps had

as yet been taken to set aside that judgment. The Court then lifted the § 362 stay.

The Court deferred action on the applications of Aaron and Gelberg, for sanctions against Mr. Wellington, until Mr. Wellington could be present personally. The Court also directed that Yvonne Hoyle be subpoenaed to ascertain her knowledge of the foreclosure proceeding begun by Mr. Aaron's office.

The adjourned hearing developed the facts set forth above.

The office of Mr. Aaron estimates that preparing the application for relief from stay, the appearance in court in connection with that application, and the subsequent hearing consumed a total of 3½ hours. The regular charge made by that office for work outside the Bankruptcy Court is $125 per hour; accordingly, Mr. Aaron, through Mr. Mendelsohn, requests that costs be assessed against Mr. Wellington in the amount of $437.50.

Mr. Gelberg asks for sanctions as compensation for the time and the costs he has incurred in connection with this matter. His costs were $42.00, incurred in serving process, at the direction of the Court, on Miss Hoyle. In addition, he asks $350.00 for his own time.

### DISCUSSION

One of the most common abuses of the bankruptcy laws is the filing of repetitious Chapter 13 petitions for the sole purpose of interfering with the rights of secured creditors. Chapter 13 lends itself to such abuse because of the fact that until the recent amendments to the Bankruptcy Code adding Section 109(f), a debtor had an absolute right to withdraw a Chapter 13 proceeding at anytime without any prejudice to his right to file an identical proceeding the very next day. Because of the numerous procedural steps involved in state foreclosure proceedings, filing a Chapter 13 petition on the eve of a judicial foreclosure sale ensured a delay of several months until the creditor was able to seek relief from the automatic stay, return to the

 

state court, and again arrange a foreclosure sale, at which point (the first bankruptcy proceeding, having in the interim, been dismissed or voluntarily withdrawn by the debtor) a new Chapter 13 Petition would be filed and the charade begun all over again.

The debtors' present Petition differs from the garden variety abuse of the bankruptcy law only in that it has been filed too late, after a foreclosure sale had already taken place, as any reasonable inquiry would have disclosed, if that fact was not already known to the debtors. That the petition was not filed in good faith is shown by the debtors' failure to make the payment called for by the Order of the Court and their failure to attend the Section 341 meeting. Also pertinent is the debtors' failure to take any action to this point in time in the New York Supreme Court to set aside the judgment which they claim was entered without their knowledge.

The abuse of the bankruptcy laws is aggravated by the incomplete, evasive and false answers given in the Petition prepared for the debtors by the office of Mr. Wellington and signed by Mr. Wellington.

Unless sanctions are imposed under Bankruptcy Rule 9011, there is no downside for debtors or their attorneys in submitting misleading, inaccurate and false documents to the Court in Chapter 13. The debtors do not thereby forfeit their right to a discharge since 11 U.S.C. § 727 does not apply to Chapter 13. 11 U.S.C. § 103(b). And if a Chapter 13 Trustee, a creditor, or the Court should grow too inquisitive, a debtor can simply take advantage of his inalienable right under 11 U.S.C. § 1307(a) to withdraw his petition and thereby avoid further inquiry.

There can be no question as to the authority of the Court to impose sanctions in circumstances like those present here. *In re Hill*, 39 B.R. 599 (B.C.Minn.1984); *Pasadena Thrift & Loan Ass'n v. Bayport Equities Corp.*, 36 B.R. 575 (B.C.C.D.Cal. 1983); *In re Ligon*, 50 B.R. 127, CCH Bankruptcy Law Reporter, ¶ 70, 714 (B.C. M.D.Tenn.1985) and cases there cited.

For the foregoing reasons, the court is imposing sanctions on Mr. Wellington and his clients. The office of Mr. Aaron is awarded $350.00, and the Chapter 13 Trustee is awarded $42.00 for his costs and $200.00 for his time, or a total of $242.00.

These amounts are payable by both Mr. Wellington and his clients, the debtors; they are their joint and several liability.

SO ORDERED.