In re Charles W. LIGON, Debtor.

FEDERAL DEPOSIT INSURANCE CORPORATION, Receiver for the Carroll County Bank, Plaintiff,

v.

Charles W. LIGON, Defendant.

Bankruptcy No. 384–00616.
Adv. No. 384–0459.

United States Bankruptcy Court, M.D. Tennessee.

Nov. 22, 1985.

---

Benjamin S. Dempsey, Jackson, Tenn., for debtor.

William R. O'Bryan, Jr., Nashville, Tenn., for plaintiff.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The question presented is whether the discharge of the debtor should be denied pursuant to 11 U.S.C. §§ 727(a)(2) or 727(a)(4)(A). On numerous occasions the debtor has concealed and misrepresented the value of property with the intent to hinder, delay and defraud the FDIC and other creditors and has knowingly and fraudulently made false oaths and accounts. The debtor has forfeited his right to a discharge in bankruptcy.

The following constitute findings of fact and conclusions of law. Bankruptcy Rule 7052. This is a core proceeding. 28 U.S.C. § 157(b).

I.

The debtor, Charles W. Ligon, is an educated man, savvy in financial affairs, with a lifetime of experience as a banker. In the 30 years from 1948 to 1978, he worked his way from the installment loan department of First American Bank in Nashville, Tennessee ("FAB") to senior vice-president of that bank. He left FAB in 1978 to become president and chief executive officer of Carroll County Bank ("CCB"), a position he held until August of 1981.

Near the end of his tenure as president of CCB, Ligon borrowed approximately $24,000 from the bank. He signed a promissory note on July 25, 1981 and a security agreement on August 15, 1981, pledging 25 shares of stock in a corporation known as BEEL. The 25 shares of BEEL stock represented Ligon's 25% interest in a Kentucky corporation that owned and rented mobile and modular homes in Ft. Campbell, Kentucky.

After pledging the BEEL stock, Ligon phoned an employee of the bank and requested that the stock be returned to him. Ligon represented that he was attempting to refinance or sell the stock to pay off his note to the bank. Relying on this representation, the bank returned the 25 shares of stock to its former president. Ligon did not refinance or sell the stock and did not pay the debt to the bank.

Approximately three months after the debtor caused the return of his collateral, the Carroll County Bank failed and the Commissioner of Banking for the State of Tennessee appointed the FDIC receiver for the bank. The debtor was indicted and convicted of falsifying documents and misapplication of funds in connection with the failure of CCB.

Ligon filed a Chapter 11 petition on March 7, 1984. At the time of filing, Ligon still owned the 25 shares of BEEL stock. He had placed an increasing value on this stock over the years. On a financial statement dated October 13, 1976, he valued the 25 shares at $100,000 (Exh. 15). A December 29, 1977 financial statement valued the stock at $163,500 (Exh. 16). The rental

property owned by BEEL was appraised for $900,000 on May 18, 1979 (Exh. 22). On his statements and schedules, Ligon claimed that the value of the BEEL stock was "unknown".

Ligon owned a one-third remainder interest in a house and lot in Lebanon, Tennessee. On both the October 13, 1976 and the December 29, 1977 financial statements, Ligon valued this one-third remainder interest at $10,000. On a December 31, 1980 financial statement, he valued the interest at $30,000. Neither the existence or the value of this property was revealed in the statements or schedules.

Ligon owned a farm in Wilson County, Tennessee. On December 19, 1980, Ligon sold the farm and the buyers signed a promissory note for $63,900 with 9% interest secured by a deed of trust. The note called for 10 annual payments of $9,959.40. At the time of filing, the buyers had made three payments. This note was only obscurely revealed in the debtor's schedules as an "assignment". The note and remaining seven payments totaling nearly $70,000 were valued by the debtor in the schedules at $10,000. In a 1980 financial statement the debtor valued this note at $100,000.

Ligon had an interest in B & L Farms, a farming partnership in Carroll County, Tennessee. Although no longer active, the partnership owned some farming equipment. The remaining assets of B & L Farms partnership were not revealed by the debtor.

Ligon owned a gun collection worth between $1,000 and $1,200. The collection contained several hunting rifles and at least one collector's rifle. The collection was not listed or valued in the schedules.

Ligon owned a home in Nashville, Tennessee. He valued the residence on his schedules at $45,000, the amount of the outstanding mortgages. He bought the property years earlier for $68,500. The debtor's wife testified that the house was well maintained and had appreciated in value since its purchase.

At a 2004 examination on April 6, 1984, the FDIC confronted the debtor with the omissions, errors and inconsistencies described above, and others. Ligon filed a plan and disclosure statement on October 2, 1984. In these documents, it was misrepresented that this was a no asset case and no effort was made to correct the omissions and errors in the statements and schedules, notwithstanding the revelations at the 2004 examination. After much acrimonious litigation[1] on March 13, 1985, Ligon offered an amendment to his schedules incorporating the 2004 examination. In May, 1985, this case was converted to Chapter 7.

## II.

The Code provides for denial of a debtor's discharge if the debtor:

with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed ... concealed, or has permitted to be transferred, removed ... or concealed

(A) property of the debtor, within one year before the date of filing the petition; or

(B) property of the estate, after the date of filing of the petition.

11 U.S.C. § 727(a)(2) (1985). In addition, discharge is forfeited if the debtor "knowingly and fraudulently, in or in connection with the case ... made a false oath or account." 11 U.S.C. § 727(a)(4)(A) (1985).

The party objecting to discharge bears the burden of proof. Bankruptcy Rule 4005; *In re Martin*, 698 F.2d 883, 887 (7th Cir.1983); *In re Gordley*, 38 B.R. 630, 631 (Bankr.S.D.Ohio 1984).

Under § 727(a)(2) the objecting party must prove actual intent to hinder, delay or defraud a creditor. *In re Hargis*, 44 B.R. 225, 228–29 (Bankr.W.D.Ky.1984). Actual intent may be inferred from persuasive and convincing circumstantial evidence. *Comprehensive Accounting Corp. v. Morgan (In re Cycle Accounting Services)*, 43 B.R. 264, 271 (Bankr.E.D.Tenn. 1985).

---

1. *See In re Ligon*, 50 B.R. 127 (Bankr.M.D.Tenn.

1984); *In re Butler*, 38 B.R. 884, 888 (Bankr.D.Kan.1984).

 Under § 727(a)(4)(A), a simple mistake or inadvertance is not sufficient to prove that the false oath was made "knowingly and fraudulently." *See Avallone v. Gross*, 309 F.2d 60, 61 (2d Cir.1962). However, the requisite intent is established when the "cumulative effect of all the falsehoods together evidences a pattern of reckless and cavalier disregard for the truth." *In re Diodati*, 9 B.R. 804, 808 (Bankr.D.Mass.1981).

 The FDIC has met its burden. The evidence reveals a pattern of omissions and actions which overwhelmingly demonstrate the debtor's intent to hinder, delay and defraud creditors. At best this debtor had a "reckless and cavalier disregard for the truth;" more likely, this debtor set about purposefully to hide the truth from his creditors.

Ligon never had any trouble valuing his stock in BEEL Corporation in the past. In 1976, he valued the stock at $100,000; in 1977 at $163,500. Ligon knew the property owned by BEEL had an appraised value of $900,000 in May of 1979. The debtor's valuing of the stock as unknown was a poorly conceived effort to disguise and conceal this substantial asset. This concealment was knowingly attempted and the inference of fraud is unavoidable.

Ligon feigns inability to estimate the market value of the home he bought for $68,500. He asserts that the value of the house is equal to the outstanding mortgages of $45,000. This is preposterous. Ligon has 30 years' experience as a banker and maker of loans. His wife forthrightly stated that the house had been maintained and had appreciated in value. This court finds that Ligon knowingly and fraudulently undervalued his home.

Ligon would have his creditors believe that seven future annual payments of $9,959.40 have a value of only $10,000.[2]

Given the debtor's background and experience, this representation can only be interpreted as a purposeful effort to conceal and mislead. This conclusion is buttressed by the obtuse description of this note in the schedules as an "assignment".

Ligon failed completely to reveal his one-third remainder interest in a house and lot in Lebanon, Tennessee and his gun collection. Prior to filing bankruptcy, Ligon listed the house and lot with values from $10,000 in 1976 to $30,000 in 1980. Ligon discussed these properties in the 2004 deposition where he valued the gun collection between $1,000 and $1,200. Notwithstanding several opportunities to offer innocent explanations for the omissions and pattern of undervaluing, this debtor has offered no rational or credible evidence to rebut the overwhelming proof of knowing concealment and fraud in this case.

Ligon's misrepresentations, omissions and undervaluations meet the requirements of §§ 727(a)(2) and 727(a)(4). An order denying the debtor's discharge will be entered.[3]

---

**2.** Applying a range of interest factors from 6% to 14%, the actual present value of seven yearly payments of $9,959.40 is between $55,597 and $42,708.

**3.** Having denied the debtor's discharge, this court need not address the § 523 claims also raised in the complaint.